IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| NORTHWEST RURAL PUBLIC POWER DISTRICT,<br><br>Plaintiff,<br><br>v.<br><br>BASIN ELECTRIC POWER COOPERATIVE and TRI-STATE GENERATION and TRANSMISSION ASSOCIATION, INC.<br><br>Defendants. | Case No. _____ |

# COMPLAINT

Plaintiff Northwest Rural Public Power District ("NRPPD" or "Plaintiff"), by its undersigned counsel, alleges against defendants Basin Electric Power Cooperative ("Basin") and Tri-State Generation and Transmission Association, Inc. ("Tri-State") (collectively, "Defendants") as follows, based on (i) personal knowledge, (ii) the investigation of counsel, and (iii) information and belief; and seeks a Declaratory Judgment, pursuant to 28 U.S. Code § 2201, of the respective rights of NRPPD, Basin, and Tri-State:

## I. INTRODUCTION

1. NRPPD has been a Member-Owner ("Member") of Tri-State Generation and Transmission Association, Inc. ("Tri-State") since Tri-State became a Generation and Transmission Cooperative ("G&T") in the 1950s. For much of the past decade, NRPPD has carefully and thoughtfully pursued a legal withdrawal from its Wholesale Electric Services Contract ("WESC") with Tri-State. See WESC, attached hereto as Exhibit 1.

2. Tri-State purchases wholesale power from Basin pursuant to an all-requirements contract (the "Wholesale Power Contract" or "WPC"), filed with the Federal Energy Regulatory

Commission ("FERC" or the "Commission") as Basin rate Schedule 16A (the "Eastern Interconnection WPC") and governed by Nebraska law (WPC section 17). See WPC, attached hereto as Exhibit 2. Tri-State then sells that wholesale power to its Eastern Interconnection Members, including NRPPD, under the terms of its WESCs, which are also jurisdictional filed rates before the Commission. Tri-State Rate Schedule No. 24. *Tri-State Generation and Transmission Ass'n., Inc.*, 172 FERC ¶ 61,172 (Aug. 28, 2020) at P. 2.

3. Section 9 of the Wholesale Power Contract addresses the calculation of payments when Tri-State members (including NRPPD) withdraw from or terminate their contract with Tri-State. NRPPD is not a party to the Wholesale Power Contract between Basin and Tri-State, but is a third-party beneficiary of the Wholesale Power Contract pursuant to Section 11 thereof. *See* WPC, § 11 ("Tri-State acknowledges that Seller's other members are third party beneficiaries solely with respect to Sections 9 and 10" of the WPC). NRPPD is also a Class C member of Basin, and is thus a third-party beneficiary of the Wholesale Power Contract between Basin and Tri-State.

4. Basin, for its part, has resisted NRPPD's withdrawal from the Tri-State WESC at every turn. Basin has claimed numerous hardships that would result from NRPPD's withdrawal from Tri-State, including that NRPPD's withdrawal would "threaten[] to destabilize' [Basin's] access to credit." *Basin Elec. Power Coop. v. Tri-State Generation & Transmission Ass'n*, No. 3:24-cv-8, 2024 U.S. Dist. LEXIS 115081, *11 (D.N.D. Apr. 24, 2024) ("*Basin II*").

5. Both the Commission and federal courts have rejected Basin's attempts to stop NRPPD's withdrawal from Tri-State. The Commission issued its Order on Initial Decision in Docket No. ER21-2818 on December 19, 2023, ("*Initial FERC Order*") affirming that it is just and reasonable for Tri-State Members, including NRPPD, to terminate their WESCs and withdraw from Tri-State. *Tri-State Generation and Transmission Association, Inc*., 185 FERC ¶ 61,201

(Dec. 19, 2023). NRPPD gave its unconditional notice of intent to terminate its WESC effective May 1, 2024. *Initial FERC Order* at P. 308. The Initial FERC Order also determined the just and reasonable CTP Methodology pursuant to which Tri-State must calculate its Members' exit fees. *Initial FERC Order* at PP. 537-572.

6.     On March 25, 2024, pursuant to Sections 206, 306, and 309 (16 U.S.C. §§ 824e; 825e; 825h) of the Federal Power Act (FPA) and Rule 206 (18 C.F.R. § 385.206) of the Commission's Rules of Practice and Procedure, NRPPD file a complaint against Basin requesting, *inter alia*, that the Commission institute a Section 206 proceeding and exercise primary jurisdiction over the interpretation of the Tri-State Order and Eastern Interconnection WPC and further hold that NRPPD's withdrawal from Tri-State is permissible under the Eastern Interconnection WPC. See Complaint, attached hereto as Exhibit 3.

7.     On December 5, 2024, the Commission ruled on Basin's breach of contract claims. *Nw. Rural Pub. Power Dist. v. Basin Elec. Power Coop.*, 189 FERC ¶ 61,164 (2024) ("*Contract Claim Order*"). In the Contract Claim Order, the Commission determined that

> the second and third sentences of section 9 [of the Basin-Tri-State Wholesale Power Contract] provide mechanisms for Tri-State to transfer assets, in the absence of Basin's approval, without breaching the Basin Eastern Requirements PPA. "Notwithstanding" the first sentence of section 9, the second and third sentences provide that Basin does not need to approve a transfer of a "substantial portion" of Tri-State's Eastern Interconnection assets if Tri-State compensates Basin by paying its pro rata portion of Basin's indebtedness or if "the purchaser or surviving organization is a member of [Basin] and has validly authorized, executed and delivered a contract for electric service" with Basin.
> 78. Moreover, the Basin Eastern Requirements PPA governs the relationship between Tri-State and Basin. Further, the Basin Eastern Requirements PPA contemplates members withdrawing from Tri-State. So, under the terms of the Basin Eastern Requirements PPA, as long as the parties meet the requirements of section 9, then Tri-State would not be in breach of the Basin

> Eastern Requirements PPA following Northwest [*62297] Rural's withdrawal. Thus, we conclude that section 9 does not prevent Northwest Rural's withdrawal from Tri-State under Rate Schedule No. 281 or that the Basin Eastern Requirements PPA is unjust, unreasonable, unduly discriminatory, or preferential on the grounds that it prevents Northwest Rural's withdrawal.

*Contract Claim Order*, 189 FERC ¶ 61,164 at PP. 77-78 (December 5, 2024). The Commission concluded that "Northwest Rural's withdrawal from Tri-State does not cause a breach to the Basin Eastern Requirements PPA." *Id.*, PP. 82. Basin is collaterally estopped from any argument to the contrary.

8.  On April 29, 2025, the Commission affirmed its Contract Claim Order in its Order Addressing Arguments Raised on Rehearing, 191 FERC ¶ 61,087 at P. 25 stating that "We continue to find that Northwest Rural's withdrawal from Tri-State membership prior to 2050 is not precluded by section 9 of the Basin Eastern Requirements PPA and does not otherwise cause a breach of the Basin Eastern Requirements PPA.[1]

9.  Basin's efforts to collaterally attack the FERC Proceedings by suing Tri-State in the U.S. District Court for the District of North Dakota have twice been denied. *Basin Elec. Power Coop. v. Tri-State Generation & Transmission Ass'n*, Case No. 3:21-cv-220, 2022 U.S. Dist. LEXIS 237838 (D.N.D. *Oct. 31, 2022*) ("*Basin I*"); *Basin Elec. Power Coop. v. Tri-State Generation & Transmission Ass'n,* No. 3:24-cv-8, 2024 U.S. Dist. LEXIS 115081 (D.N.D. Apr. 24, 2024) (*"Basin II"*).

---

[1] Basin filed a petitions for review of both FERC Orders in the United States Court of Appeals for the District of Columbia Circuit, *Basin Electric Power Cooperative v. Federal Energy Regulatory Commission,* Nos. 25-1060, 25-1130, where the matters are currently pending.

10. Faced with clear rulings from FERC, and thwarted by federal courts from challenging FERC's rulings, Basin has turned to a new tactic: Removing itself from FERC's jurisdiction.

11. Specifically, on or about July 16, 2025, Basin filed a Motion to Dismiss a FERC complaint, on the basis that it received funds from the United States Department of Agriculture ("USDA") Rural Utilities Service ("RUS"). *See* Affidavit of Christopher A. Johnson, which was attached to the Basin Motion and is also attached hereto as Exhibit 4. Basin contends that the receipt of RUS funds render it "not a 'public utility'" as that term is defined in Section 201(e) of the Federal Power Act and thus no longer subject to FERC jurisdiction.

12. Basin has also verbally asserted that because it would no longer be subject to FERC jurisdiction, it would no longer bound by the Contract Claim Order, which held that that section 9 of the Basin Eastern Requirements PPA does not prevent Northwest Rural's withdrawal from Tri-State under Rate Schedule No. 281.

13. At least one utility has filed a complaint with FERC, alleging that Basin's miniscule RUS loan is a "nominal and sham transaction," is "void or ineffective" for purposes of removing Basin from FERC jurisdiction, and is inconsistent with the regulatory purposes of FPA Section 204. See Complaint of McKenzie Electric Cooperative (excluding exhibits), attached hereto as Exhibit 5.

14. NRPPD expects that FERC will eventually rule that Basin remains subject to FERC jurisdiction. However, NRPPD files this action for a different purpose. Even if Basin's creative financial machinations have successfully removed it from FERC jurisdiction, it is precluded from ignoring the Initial FERC Order and the Contract Claim Order by the doctrine of issue preclusion. NRPPD seeks a declaratory judgment to that effect.

## II. JURISDICTION AND VENUE

15. This Court has jurisdiction over this case under 28 U.S.C. § 1331, 28 U.S.C. § 1332(a)(1), and 28 U.S.C. § 2201.

16. This Court has the authority to grant declaratory and injunctive relief pursuant to the Declaratory Judgment Act and this Court's inherent equitable powers. See 28 U.S.C. §§ 2201, 2202;

17. Venue is proper in this district under 28 U.S.C. § 1391(b)(2), as a substantial part of the events giving rise to this claim occurred in the State of Nebraska.

## III. PARTIES

18. Plaintiff Northwest Rural Public Power District is a political subdivision of the State of Nebraska. NRPPD's principal place of business is 5613 State Highway 87, Hay Springs, Nebraska 69347.

19. Defendant Basin Electric Power Cooperative, is a not-for-profit, member-owned electric cooperative corporation organized under North Dakota law. Basin's principal place of business is 1717 East Interstate Avenue, Bismarck, North Dakota, 58503.

20. Defendant Tri-State Generation and Transmission Association, Inc., is a member-owned electric cooperative corporation and is organized under Colorado law. Tri-State's principal place of business is 1100 West 116th Avenue, Westminster, Colorado, 80234.

## IV. STATEMENT OF FACTS

21. The factual allegations in the preceding paragraphs are incorporated by reference.

22. NRPPD has been a Member-Owner ("Member") of Tri-State Generation and Transmission Association, Inc. ("Tri-State") since Tri-State became a Generation and Transmission Cooperative ("G&T") in the 1950s. For much of the past decade, NRPPD has

carefully and thoughtfully pursued a legal withdrawal from its Wholesale Electric Services Contract ("WESC") with Tri-State. Recently, both Tri-State and Basin became public utilities under the Federal Power Act ("FPA"), 16 U.S.C. § 824(e), and as such, their rates for wholesale electric service are subject to the exclusive jurisdiction of the Federal Energy Regulatory Commission ("FERC" or the "Commission"). 16 U.S.C. § 824(a). Among its commitments to serve NRPPD, Tri-State purchases wholesale power from Basin pursuant to an all-requirements contract, filed with the Commission as Basin rate Schedule 16A (the "Eastern Interconnection WPC"). Tri-State then resells that wholesale power to its Eastern Interconnection Members, including NRPPD, under the terms of its WESCs, which are also jurisdictional filed rates before the Commission. Tri-State Rate Schedule No. 24. *Tri-State Generation and Transmission Ass'n., Inc.*, 172 FERC ¶ 61,172 (Aug. 28, 2020) at P. 2.

23. Pursuant to its powers under the FPA, the Commission has the exclusive power to consider whether the Eastern Interconnection WPC and the WESC between Tri-State and NRPPD constitute rates that are just, reasonable, and not unduly discriminatory or preferential. 16 U.S.C. §§ 824d; 824e.

24. Tri-State became FERC-jurisdictional on September 3, 2019. *Tri-State Generation and Transmission Ass'n., Inc.*, 170 FERC ¶ 61,224 (Mar. 20, 2020) at P. 82.

25. On April 13, 2020, Tri-State filed a proposed Contract Termination Payment ("CTP") Methodology with FERC that would allow its Members to withdraw from Tri-State. *Tri-State Generation and Transmission Ass'n., Inc.*, 171 FERC ¶ 61,207 (Jun. 12, 2020) at P. 1.

26. Almost a year after submitting this initial CTP filing, Tri-State submitted a set of proposed procedural requirements to FERC associated with a Member's request to withdraw from Tri-State ("Board Policy 125"). *Tri-State Generation and Transmission Ass'n., Inc.*, 175 FERC ¶

61,114 (May 14, 2021) at P. 1. Included in these procedures was a requirement that "any withdrawal by a…Member shall be subject to the approval of the [Tri-State] Board of Directors, and no…Member shall be permitted to withdraw if…such withdrawal would have a material adverse effect on Tri-State." *Id*. at P. 9.

27. FERC rejected Tri-State's proposed procedures because they "impose[d] excessive and unjustified barriers to utility members seeking information to assess whether to terminate their WESCs with Tri-State." *Id*. at P. 52 (May 14, 2021). FERC said Tri-State's proposed veto power was "not justified" because it would "allow Tri-State to unilaterally prevent a utility member from terminating its membership." *Id*.

28. FERC issued an Order to Show Cause that Tri-State's CTP Methodology was just, reasonable, and not unduly discriminatory or preferential. *Tri-State Generation and Transmission Ass'n, Inc.*, 175 FERC ¶ 61,229 (Jun. 17, 2021) at P. 1.

29. Rather than respond to the Commission's directive in that Order, Tri-State instead filed a Modified CTP Methodology that "explicitly state[d] that Tri-State's Board of Directors has no discretion to prevent a utility member from terminating its membership in Tri-State," so long as the withdrawing Member provided Tri-State with a two-year notice of withdrawal, and paid Tri-State its CTP upon the date of its withdrawal. *Tri-State Generation and Transmission Ass'n, Inc*. 177 FERC ¶ 61,059 at P. 121 (Oct. 29, 2021) (Hearing Order).

30. Basin protested the Modified CTP Methodology, specifically the lack of Board approval for withdrawals, and argued that the Commission should require both Tri-State Board approval and Basin approval for Eastern Interconnection Member withdrawal. Basin argued that

> [T]he Commission should not allow Tri-State to implement a CTP methodology that does not provide for Board approval for the termination of a WESC because Basin Electric avers that it allows Tri-State to dispose of assets without the prior

written authorization required under Tri-State's Wholesale Power Contract with Basin Electric.

*Id.* at P. 109.

31. FERC disagreed with Basin's argument regarding the Eastern Interconnection WPC, and, in its October 29, 2021 Hearing Order, accepted Tri-State's Modified CTP Methodology for hearing procedures in FERC Docket No. ER21-2818 without including either a Tri-State Board approval requirement or a Basin approval requirement. Thus, the Commission confirmed its prior holding that such unilateral veto power over Tri-State Member withdrawal was unjust and unreasonable. *Id.* at P. 121.

32. Basin did not request rehearing or reconsideration of FERC's Hearing Order of October 29, 2021, nor did it further participate in discovery, briefing, or hearing procedures in the FERC CTP Docket No. ER21-2818.

33. The Commission issued its Order on Initial Decision in Docket No. ER21-2818 on December 19, 2023, ("*Initial FERC Order*") affirming that it is just and reasonable for Tri-State Members, including NRPPD, to terminate their WESCs and withdraw from Tri-State. *Tri-State Generation and Transmission Association, Inc.*, 185 FERC ¶ 61,201 (Dec. 19, 2023). The Initial FERC Order also determined the just and reasonable CTP Methodology pursuant to which Tri-State must calculate its Members' exit fees.

34. On April 30, 2022, NRPPD gave its unconditional notice of intent to terminate its WESC effective May 1, 2024. *Initial FERC Order* at P. 308.

35. In the Initial FERC Order, the Commission explicitly deferred ruling on whether NRPPD's withdrawal from Tri-State would cause a breach of Tri-State's WPC with Basin, noting that "[w]e decline to address whether there has been a breach of the Basin Eastern Requirements

PPA, because that issue is not before the Commission in this proceeding." *Initial FERC Order*, at P. 554 n. 900.

36. NRPPD then filed a new complaint to obtain the Commission's ruling on Basin's breach of contract claims. Basin was a full and complete participant in that proceeding and raised arguments as to why it believed that NRPPD's withdrawal from Tri-State would cause a breach of Tri-State's Wholesale Power Contract with Basin. See Contract Claim Order, PP. 38-51; 72-79. The Commission explicitly found that NRPPD's withdrawal from Tri-State would not violate the WPC between Tri-State and Basin. *Id.*, P. 82.

37. Having lost with FERC, Basin twice sought to collaterally attack the Hearing Order by suing Tri-State in the U.S. District Court for the District of North Dakota. *Basin Elec. Power Coop. v. Tri-State Generation & Transmission Ass'n*, Case No. 3:21-cv-220, 2022 U.S. Dist. LEXIS 237838 (D.N.D. *Oct. 31, 2022) ("Basin I"); Basin Elec. Power Coop. v. Tri-State Generation & Transmission Ass'n,* No. 3:24-cv-8, 2024 U.S. Dist. LEXIS 115081 (D.N.D. Apr. 24, 2024).

38. Both *Basin I* and *Basin II* were unsuccessful. The North Dakota Court held that "FERC's agency expertise on the issue of early termination and filed rates, along with the need for uniformity and consistency in decision making, places this case within the doctrine of primary jurisdiction," *Basin I*, 2022 U.S. Dist. LEXIS 237838, *31 (D.N.D. Oct. 31, 2022), and that 16 U.S.C. § 825l(b) granted the Courts of Appeals "exclusive domain extend[ing] to all matters 'inhering in the controversy' of a final FERC order." *Basin II*, 2024 U.S. Dist. LEXIS 115081, *15 (D.N.D. Apr. 24, 2024).

39. On March 25, 2024, NRPPD file a complaint with FERC against Basin requesting, *inter alia*, that the Commission institute a Section 206 proceeding and exercise primary jurisdiction

over the interpretation of the Tri-State Order and Eastern Interconnection WPC and hold that NRPPD's withdrawal from Tri-State is permissible under the Eastern Interconnection WPC.

40. On May 8, 2024, Basin submitted its Response to NRPPD's complaint, which consisted of over 1,000 pages of argument and exhibits. On the same date, Tri-State also responded to NRPPD's complaint.

41. On December 5, 2024, the Commission ruled on NRPPD's complaint. As an initial matter the Commission found it was appropriate for it to exercise primary jurisdiction over this dispute to address the complaint. *Contract Claim Order*, 189 FERC ¶ 61,164 at P65. (December 5, 2024). The Commission reasoned that "there is a need for uniformity of interpretation of the type of question raised by the dispute." *Id.* at P68, citing *Ark. La. Gas Co. v. Hall*, 7 FERC ¶ 61,175, at 61,322 (*Arkla*), *reh'g denied*, 8 FERC ¶ 61,031 (1979).

42. The Commission concluded that:

> Leaving this matter for the courts to decide may result in inconsistent interpretations of the Basin Eastern Requirements PPA, as well as possibly Rate Schedule No. 281, as other Eastern Interconnection members may seek different, competing interpretations of the contract in other jurisdictions. Moreover, section 9 of the Basin Eastern Requirements PPA is standard contract language, commonly referred to as a "*Shoshone* Amendment," that the Rural Utilities Service mandated that requirements contracts include as a condition of additional financing. Thus, exercising primary jurisdiction is warranted to ensure a uniform interpretation of these matters.

*Id.* at P68 (footnotes omitted).

43. The Commission further held that pursuant to section 9 of the Basin Eastern Requirements PPA, NRPPD's withdrawal from Tri-State does not violate that agreement, (*Id.* P72) "so long as Tri-State shall pay such pro rata portion of the outstanding indebtedness, as well as other obligations and commitments of Seller at the time existing." That is, "the second and

third sentences of section 9 provide mechanisms for Tri-State to transfer assets, in the absence of Basin's approval, without breaching the Basin Eastern Requirements PPA." *Id*, P77.

44. On or about July 16, 2025, Basin filed a Motion to Dismiss a FERC complaint, alleging that it received funds from the United States Department of Agriculture ("USDA") Rural Utilities Service ("RUS"). See Affidavit of Christopher A. Johnson, which was attached to the Basin Motion and is also attached hereto as Exhibit 4. Upon information and belief, Basin received $928,000 in loan proceeds from RUS. Basin now contends that the receipt of RUS funds render it "not a 'public utility'" as that term is defined in Section 201(e) of the Federal Power Act, and thus no longer subject to FERC jurisdiction. Basin has also asserted that, because it would no longer be subject to FERC jurisdiction, it would no longer bound by the Contract Claim Order, which held that that section 9 of the Basin Eastern Requirements PPA does not prevent Northwest Rural's withdrawal from Tri-State under Rate Schedule No. 281.

45. Basin's $928,000 RUS loan is dwarfed by other, non-RUS loans that it previously received in 2008, 2009 and 2011 in the amounts of $325M, $100M, and $204M, respectively. See RND0045AB8 98, RO3234 11180, and RO3234 17554 at https://www.usaspending.gov. The disparity in prior loan amounts and the new loan indicates deliberate action by Basin to end FERC jurisdiction rather than a business purpose for the loan.

46. At least one utility has filed a complaint with FERC, alleging that Basin's miniscule RUS loan is a "nominal and sham transaction," is "void or ineffective" for purposes of removing Basin from FERC jurisdiction, and is inconsistent with the regulatory purposes of FPA Section 204. See Complaint of McKenzie Electric Cooperative (excluding exhibits), attached hereto as Exhibit 5.

47. Specifically, at the time Basin sought the RUS loan, it was still a public utility, and Section 204 of the FPA prohibits a public utility (which Basin indisputably was prior to obtaining the RUS loan) from incurring debt unless FERC finds that the debt was obtained "for some lawful object, within the corporate purposes of the applicant and compatible with the public interest, which is necessary or appropriate . . . for such purposes."

## FIRST CAUSE OF ACTION

### (Declaratory Relief – Res Judicata and Collateral Estoppel)

48. NRPPD repeats and realleges paragraphs 1 through 47 as if recited herein.

49. In a case of actual controversy within its jurisdiction, this Court may declare the rights and other legal relations of any interested party seeking declaratory judgment, whether or not further relief is sought. *See* 28 U.S.C. § 2201 (2025). Further necessary or proper relief stemming from the declaratory judgment or decree may be granted. *See* 28 U.S.C. § 2202 (2025).

50. Basin has demonstrated through its words and actions that it does not believe that is obligated to follow the Contract Claim Order previously issued by FERC.

51. Contrary to Basin's assertions, the doctrine of res judicata (also known as claim preclusion) and collateral estoppel (also known as issue preclusion) "bars a party from relitigating an issue once it has suffered an adverse determination on the issue." *Park Lake Res. Ltd. Liab. v. U.S. Dep't of Agric.*, 378 F.3d 1132, 1136 (10th Cir. 2004). Under the doctrines of res judicata and collateral estoppel, the Commission's determinations regarding the Eastern Interconnection members' CTP applies to all parties to the proceeding, including Basin, Tri-State and NRPPD, unless altered on direct appeal. *Smith v FERC*, Case No. 05-1572, (1st Cir. July 7, 2005), attached hereto as Exhibit 6.

52. "Res judicata is when 'a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action.'" *Saylor v. Jeffreys*, 131 F.4th 864, 866 (8th Cir. 2025) (*citing Yankton Sioux Tribe v. U.S. Dep't of Health & Hum. Servs.*, 533 F.3d 634, 639 (8th Cir. 2008)). Res Judicata applies when: "(1) the first suit resulted in a final judgment on the merits; (2) the first suit was based on proper jurisdiction; (3) both suits involve the same parties (or those in privity with them); and (4) both suits are based upon the same claims or causes of action." *Saylor*, 131 F.4th at 866 (*citing Elbert v. Carter*, 903 F.3d 779, 782 (8th Cir. 2018)).

53. Nebraska law, which governs the WPC, similarly holds that agency determinations are res judicata and may not be relitigated. *Moulton v. Board of Zoning Appeals for City of Lincoln, Neb.*, 251 Neb. 95, 101-02, 555 N.W.2d 39, 45 (1996); *County of Adams v. Nebraska State Board of Equalization and Assessment*, 252 Neb. 847, 854, 566 N.W.2d 392, 397 (1997).

54. Res Judicata precludes Basin from disputing the *Initial FERC Order* and the *Contract Claim Order* or collaterally attacking agency determinations regarding those Orders. The Orders (1) resulted in a final judgment on the merits; (2) were properly jurisdictional at the time they were rendered; (3) involved the same parties as the instant case; and (4) relate to the same contract construction claims at issue here. Basin was a full participant in the FERC Proceedings that resulted in the *Initial FERC Order* and the *Contract Claim Order*. In those FERC Proceedings, Basin vigorously argued its position and asserted, among other things, that Tri-State was contractually prohibited from allowing NRPPD from leaving Tri-State. In other words, Basin had a full and fair opportunity to litigate its position at FERC. Contract Claim Order, PP 43 ("Basin argues that section 14--not section 9--is the relevant "termination

provision" of the Basin Eastern Requirements PPA, which prohibits termination of the contract prior to December 31, 2050."). The Commission explicitly rejected this argument, concluding that Northwest Rural's withdrawal from Tri-State does not cause a breach to the Basin Eastern Requirements PPA." *Contract Claim Order*, PP. 82.

55. Similarly, the doctrine of Collateral Estoppel "means that when an issue of ultimate fact has been determined by a final judgment, that issue cannot again be litigated between the same parties in a future lawsuit." *Softchoice Corp. v. MacKenzie*, 636 F. Supp. 2d 927, 936 (D. Neb. 2009) (*citing Woodward v. Andersen*, 261 Neb. 980, 627 N.W.2d 742 (2001).

56. In the Contract Claim Order, FERC determined that "Northwest Rural's withdrawal from Tri-State does not cause a breach to the Basin Eastern Requirements PPA." *Contract Claim Order*, PP. 82.

57. Accordingly, NRPPD is entitled to a declaration that Basin and Tri-State are barred from relitigating the issue of breach of contract, and are bound by the determination of the Initial FERC Order that it is just and reasonable for Eastern Interconnection Tri-State Members, including NRPPD, to terminate their WESCs and withdraw from Tri-State.

58. NRPPD is further entitled to a declaration that Northwest Rural's withdrawal from Tri-State does not cause a breach to Basin-Tri-State Wholesale Power Agreement.

## PRAYER FOR RELIEF

WHEREFORE, NRPPD respectfully prays that the court enter judgment against Basin and in favor of NRPPD, as follows:

A. Declaring that Basin and Tri-State remain bound by the holding of the Initial FERC Order and the Contract Claim Order, and are barred by the doctrines of res judicata and collateral estoppel from making any argument to the contrary;

  B. Declaring that NRPPD is permitted to terminate its WESC and withdraw from Tri-State;

  C. Declaring that such a withdrawal does not breach the Wholesale Power Agreement between Basin and Tri-State;

  D. Entering injunctive and other equitable relief, pursuant this Court's equitable powers; and

  E. Ordering such other and further relief as the Court may deem just, proper and equitable.

DATED: July 18, 2025

By: */s/ David Jarecke*
David Jarecke, #20088
Ellen Kreifels, #25481
Blankenau Wilmoth Jarecke LLP
2900 South 70th Street, Suite 150
Lincoln, NE 68506
402.4758.7080
dave@bwjlawgroup.com
ellen@bwjlawgroup.com

By: */s/ Patrick T. Vint*
Patrick T. Vint, #26176
Woods Aitken LLP
10250 Regency Parkway, Suite 525
Omaha, NE 68164
402.898.7400
pvint@woodsaitken.com

Richard Lorenzo (*pro hac vice* to be filed)
J.D Taliaferro (*pro hac vice* to be filed))
Nicole Travers (*pro hac vice* to be filed))
Loeb & Loeb LLP
901 New York Avenue NW
Washington, DC 20001
Tel.: 202.618.5000
rlorenzo@loeb.com
jtaliaferro@loeb.com
ntravers@loeb.com
*Attorneys for the Plaintiff Northwest Rural Public Power District*