## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

|  |  |
|---|---|
| NORTHWEST RURAL PUBLIC POWER DISTRICT, <br><br> Plaintiff, <br><br> v. <br><br> BASIN ELECTRIC POWER COOPERATIVE and TRI-STATE GENERATION and TRANSMISSION ASSOCIATION, INC. <br><br> Defendants. | Case No. 4:25-cv-03153 |

## FIRST AMENDED COMPLAINT[1]

Plaintiff Northwest Rural Public Power District ("NRPPD" or "Plaintiff"), by its undersigned counsel, alleges against defendants Basin Electric Power Cooperative ("Basin") and Tri-State Generation and Transmission Association, Inc. ("Tri-State") (collectively, "Defendants") as follows, based on (i) personal knowledge, (ii) the investigation of counsel, and (iii) information and belief; and seeks a Declaratory Judgment, pursuant to 28 U.S. Code § 2201, of the respective rights of NRPPD, Basin, and Tri-State:

### I.    INTRODUCTION

1.    NRPPD has been a Member-Owner ("Member") of Tri-State since Tri-State became a Generation and Transmission Cooperative in the 1950s. For much of the past decade, NRPPD has carefully and thoughtfully pursued a legal withdrawal from its Wholesale Electric Services Contract ("WESC") with Tri-State. *See* WESC, attached hereto as Exhibit 1.

---

[1] No Responsive Pleading has been filed. Pursuant to Fed. R. Civ. P. 15(a), NRPPD may amend its Complaint as a matter of right.

2.      Tri-State purchases wholesale power from Basin pursuant to an all-requirements contract (the "Wholesale Power Contract" or "WPC"), filed with the Federal Energy Regulatory Commission ("FERC" or the "Commission") as Basin rate Schedule 16A (the "Eastern Interconnection WPC") and governed by Nebraska law (WPC section 17).  *See* WPC, attached hereto as <u>Exhibit 2</u>. Tri-State then sells that wholesale power to its Eastern Interconnection Members, including NRPPD, under the terms of its WESCs, which are also jurisdictional filed rates before the Commission. Tri-State Rate Schedule No. 24. *Tri-State Generation and Transmission Ass'n., Inc.*, 172 FERC ¶ 61,172 (Aug. 28, 2020) at P. 2.

3.      Section 9 of the Wholesale Power Contract addresses the calculation of payments when Tri-State members (including NRPPD) withdraw from or terminate their contract with Tri-State. Specifically, Section 9 requires Basin to determine "such pro rata portion of the outstanding indebtedness" (the "Exit Fee"), payment of which is a condition of withdrawal. FERC also has noted that Section 9 "states that approval of a transfer of assets 'shall not be unreasonably withheld, delayed or conditioned.'"[2]

4.      NRPPD is not a party to the Wholesale Power Contract between Basin and Tri-State, but is a Member of Tri-State and a Class C member of Basin. Therefore, NRPPD is a third-party beneficiary of the Wholesale Power Contract pursuant to Section 11 thereof.  *See* WPC, § 11 ("Tri-State acknowledges that Seller's other members are third party beneficiaries solely with respect to Sections 9 and 10" of the WPC).

5.      Basin, for its part, has resisted NRPPD's withdrawal from the Tri-State WESC at every turn.  Basin has claimed numerous hardships that would result from NRPPD's withdrawal from Tri-State, including that NRPPD's withdrawal would "threaten[] to destabilize' [Basin's]

---

[2] *Order on Compliance,* 192 FERC ¶ 61,109 at n. 111 (August 4, 2025) ("*Compliance Order*").

access to credit." *Basin Elec. Power Coop. v. Tri-State Generation & Transmission Ass'n*, No. 3:24-cv-8, 2024 U.S. Dist. LEXIS 115081, *11 (D.N.D. Apr. 24, 2024) ("*Basin II*").

6.    Both the Commission and federal courts have rejected Basin's attempts to stop NRPPD's withdrawal from Tri-State.  The Commission issued several Orders rejecting Basin's arguments including Order on Initial Decision in Docket No. ER21-2818 on December 19, 2023, ("*Initial FERC Order*") and its *Compliance Order* affirming that it is just and reasonable and in the public interest for Tri-State Members, including NRPPD, to terminate their WESCs and withdraw from Tri-State. *Tri-State Generation and Transmission Association, Inc*., 185 FERC ¶ 61,201 (Dec. 19, 2023). NRPPD gave its unconditional notice of intent to terminate its WESC effective May 1, 2024. *Initial FERC Order* at P. 308. The Initial FERC Order also determined the just and reasonable CTP Methodology pursuant to which Tri-State must calculate its Members' exit fees. *Initial FERC Order* at PP. 537-572.

7.    On March 25, 2024, pursuant to Sections 206, 306, and 309 (16 U.S.C. §§ 824e; 825e; 825h) of the Federal Power Act ("FPA") and Rule 206 (18 C.F.R. § 385.206) of the Commission's Rules of Practice and Procedure, NRPPD filed a complaint against Basin requesting, *inter alia*, that the Commission institute a Section 206 proceeding and exercise primary jurisdiction over the interpretation of the Tri-State Order and Eastern Interconnection WPC and further hold that NRPPD's withdrawal from Tri-State is permissible under the Eastern Interconnection WPC. *See* Complaint, attached hereto as <u>Exhibit 3</u>.

8.    On December 5, 2024, the Commission ruled on Basin's breach of contract claims. *Nw. Rural Pub. Power Dist. v. Basin Elec. Power Coop.*, 189 FERC ¶ 61,164 (2024) ("*Contract Claim Order*").  In the Contract Claim Order, the Commission determined that

> the second and third sentences of section 9 [of the Basin-Tri-State Wholesale Power Contract] provide mechanisms for Tri-State to

> transfer assets, in the absence of Basin's approval, without breaching the Basin Eastern Requirements PPA.
>
> "Notwithstanding" the first sentence of section 9, the second and third sentences provide that Basin does not need to approve a transfer of a "substantial portion" of Tri-State's Eastern Interconnection assets if Tri-State compensates Basin by paying its pro rata portion of Basin's indebtedness or if "the purchaser or surviving organization is a member of [Basin] and has validly authorized, executed and delivered a contract for electric service" with Basin.
>
> 78. Moreover, the Basin Eastern Requirements PPA governs the relationship between Tri-State and Basin. Further, the Basin Eastern Requirements PPA contemplates members withdrawing from Tri-State. So, under the terms of the Basin Eastern Requirements PPA, as long as the parties meet the requirements of section 9, then Tri-State would not be in breach of the Basin Eastern Requirements PPA following Northwest [*62297] Rural's withdrawal. Thus, we conclude that section 9 does not prevent Northwest Rural's withdrawal from Tri-State under Rate Schedule No. 281 or that the Basin Eastern Requirements PPA is unjust, unreasonable, unduly discriminatory, or preferential on the grounds that it prevents Northwest Rural's withdrawal.

*Contract Claim Order*, 189 FERC ¶ 61,164 at PP. 77-78 (December 5, 2024). The Commission concluded that "Northwest Rural's withdrawal from Tri-State does not cause a breach to the Basin Eastern Requirements PPA." *Id.*, PP. 82. Basin is collaterally estopped from any argument to the contrary.

9.     On April 29, 2025, the Commission affirmed its Contract Claim Order in its Order Addressing Arguments Raised on Rehearing, 191 FERC ¶ 61,087 at P. 25 stating that "We continue to find that Northwest Rural's withdrawal from Tri-State membership prior to 2050 is not precluded by section 9 of the Basin Eastern Requirements PPA and does not otherwise cause a breach of the Basin Eastern Requirements PPA.

10.     Basin filed petitions for review of both FERC Orders in the United States Court of Appeals for the District of Columbia Circuit, *Basin Electric Power Cooperative v. Federal Energy Regulatory Commission,* Nos. 25-1060, 25-1130, where the matters are currently pending.

However, filing a petition for review of a FERC order does not automatically stay the effectiveness of the order. Instead, the party must apply for a stay, either to FERC or to the reviewing court. *See* 15 U.S.C.S. § 717r(c) ("The filing of an application for rehearing under subsection(a) shall not, unless specifically ordered by the Commission, operate as a stay of the Commission's order. The commencement of proceedings under subsection (b) of this section shall not, unless specifically ordered by the court, operate as a stay of the Commission's order."). Basin has not requested a stay from either the Commission or from the Court of Appeals for the District of Columbia Circuit. Thus, the FERC Orders are effective and have the force of federal law.

11.    Basin's efforts to stop or delay the FERC Proceedings by suing Tri-State in the U.S. District Court for the District of North Dakota have twice been denied. *Basin Elec. Power Coop. v. Tri-State Generation & Transmission Ass'n*, Case No. 3:21-cv-220, 2022 U.S. Dist. LEXIS 237838 (D.N.D. *Oct. 31, 2022) ("Basin I"); Basin Elec. Power Coop. v. Tri-State Generation & Transmission Ass'n,* No. 3:24-cv-8, 2024 U.S. Dist. LEXIS 115081 (D.N.D. Apr. 24, 2024) (*"Basin II").*

12.    Faced with clear rulings from FERC, and thwarted by federal courts from challenging FERC's rulings, Basin has turned to a new tactic: Removing itself from FERC's jurisdiction.

13.    Specifically, on or about July 16, 2025, Basin filed a Motion to Dismiss a FERC complaint, on the basis that it received funds from the United States Department of Agriculture ("USDA") Rural Utilities Service ("RUS").  *See* Affidavit of Christopher A. Johnson, which was attached to the Basin Motion and is also attached hereto as <u>Exhibit 4</u>.  Basin contends that the receipt of RUS funds render it "not a 'public utility'" as that term is defined in Section 201(e) of the Federal Power Act and thus no longer subject to FERC jurisdiction.

14.     Tri-State's CEO, Duane Highley ("Highley"),  said at the Tri-State 2025 Annual Meeting that Basin was attempting to remove itself from FERC jurisdiction by borrowing a small loan from RUS. The clear consequence of Highley's statement is that such termination of jurisdiction could jeopardize withdrawal by Tri-State's Eastern Interconnect members (of which NRPPD is one).

15.     At least one utility has filed a complaint with FERC, alleging that Basin's miniscule RUS loan is a "nominal and sham transaction," is "void or ineffective" for purposes of removing Basin from FERC jurisdiction, and is inconsistent with the regulatory purposes of FPA Section 204.  *See* Complaint of McKenzie Electric Cooperative (excluding exhibits), attached hereto as Exhibit 5.

16.     NRPPD expects that FERC will eventually rule that Basin remains subject to FERC jurisdiction.  However, NRPPD files this action for a different purpose.  Even if Basin's creative financial machinations have successfully removed it from FERC jurisdiction, it is precluded from ignoring the Initial FERC Order and the Contract Claim Order by the doctrine of issue preclusion. NRPPD seeks a declaratory judgment to that effect.

17.     Moreover, both the Initial FERC Order and the Contract Claim Order, as well as Section 9 of the WPC require Basin to provided Tri-State with a calculation of the Exit Fee that will be due when NRPPD exits Tri-State.  Section 9 of the WPC further requires that Basin's approval of the transfer of assets "shall not be unreasonably withheld, delayed or conditioned." Basin has refused to do so, which effectively prevents or unreasonably delays NRPPD's exit from Tri-State.  Basin's failure to provide even a calculation of the Exit Fee is a breach of the WPC between Basin and Tri-State.  It also tortiously interferes in the WESC contract between Tri-State

and NRPPD, the business relationship between Tri-State and NRPPD, and the prospective business relationship between NRPPD and Nebraska Public Power District ("NPPD").

## II.    JURISDICTION AND VENUE

18.    This Court has jurisdiction over this case under 28 U.S.C. § 1331, 28 U.S.C. § 1332(a)(1), and 28 U.S.C. § 2201.

19.    This Court has the authority to grant declaratory and injunctive relief pursuant to the Declaratory Judgment Act and this Court's inherent equitable powers. *See* 28 U.S.C. §§ 2201, 2202;

20.    Venue is proper in this district under 28 U.S.C. § 1391(b)(2), as a substantial part of the events giving rise to this claim occurred in the State of Nebraska.

## III.    PARTIES

21.    Plaintiff Northwest Rural Public Power District is a political subdivision of the State of Nebraska.  NRPPD's principal place of business is 5613 State Highway 87, Hay Springs, Nebraska 69347.

22.    Defendant Basin Electric Power Cooperative, is a not-for-profit, member-owned electric cooperative corporation organized under North Dakota law. Basin's principal place of business is 1717 East Interstate Avenue, Bismarck, North Dakota, 58503.

23.    Defendant Tri-State Generation and Transmission Association, Inc., is a member-owned electric cooperative corporation and is organized under Colorado law. Tri-State's principal place of business is 1100 West 116th Avenue, Westminster, Colorado, 80234.

## IV.    STATEMENT OF FACTS

24.    The factual allegations in the preceding paragraphs are incorporated by reference.

25.     NRPPD has been a Member of Tri-State since Tri-State became a Generation and Transmission Cooperative in the 1950s. For much of the past decade, NRPPD has carefully and thoughtfully pursued a legal withdrawal from its WESC with Tri-State.  In 2019, both Tri-State and Basin became public utilities under the FPA, 16 U.S.C. § 824(e), and as such, their rates for wholesale electric service became subject to the exclusive jurisdiction of the FERC. 16 U.S.C. § 824(a). Among its commitments to serve NRPPD, Tri-State purchases wholesale power from Basin pursuant to an all-requirements contract, filed with the Commission as Basin rate Schedule 16A (the "Eastern Interconnection WPC"). Tri-State then resells that wholesale power to its Eastern Interconnection Members, including NRPPD, under the terms of its WESCs, which are also jurisdictional filed rates before the Commission. Tri-State Rate Schedule No. 24. *Tri-State Generation and Transmission Ass'n., Inc.*, 172 FERC ¶ 61,172 (Aug. 28, 2020) at P. 2.

26.     Pursuant to its powers under the FPA, the Commission has the exclusive power to consider whether the Eastern Interconnection WPC and the WESC between Tri-State and NRPPD constitute rates that are just, reasonable, and not unduly discriminatory or preferential. 16 U.S.C. §§ 824d; 824e.

27.     Tri-State became FERC-jurisdictional on September 3, 2019.  *Tri-State Generation and Transmission Ass'n., Inc.*, 170 FERC ¶ 61,224 (Mar. 20, 2020) at P. 82.

28.     On April 13, 2020, Tri-State filed a proposed Contract Termination Payment ("CTP") Methodology with FERC that would allow its Members to withdraw from Tri-State.  *Tri-State Generation and Transmission Ass'n., Inc.*, 171 FERC ¶ 61,207 (Jun. 12, 2020) at P. 1.

29.     Almost a year after submitting this initial CTP filing, Tri-State submitted a set of proposed procedural requirements to FERC associated with a Member's request to withdraw from Tri-State ("Board Policy 125"). *Tri-State Generation and Transmission Ass'n., Inc.*, 175 FERC ¶

61,114 (May 14, 2021) at P. 1. Included in these procedures was a requirement that "any withdrawal by a…Member shall be subject to the approval of the [Tri-State] Board of Directors, and no…Member shall be permitted to withdraw if…such withdrawal would have a material adverse effect on Tri-State." *Id*. at P. 9.

30.     FERC rejected Tri-State's proposed procedures because they "impose[d] excessive and unjustified barriers to utility members seeking information to assess whether to terminate their WESCs with Tri-State." *Id*. at P. 52 (May 14, 2021).  FERC said Tri-State's proposed veto power was "not justified" because it would "allow Tri-State to unilaterally prevent a utility member from terminating its membership." *Id*.

31.     FERC issued an Order to Show Cause that Tri-State's CTP Methodology was just, reasonable, and not unduly discriminatory or preferential. *Tri-State Generation and Transmission Ass'n, Inc.*, 175 FERC ¶ 61,229 (Jun. 17, 2021) at P. 1.

32.     Rather than respond to the Commission's directive in that Order, Tri-State instead filed a Modified CTP Methodology that "explicitly state[d] that Tri-State's Board of Directors has no discretion to prevent a utility member from terminating its membership in Tri-State," so long as the withdrawing Member provided Tri-State with a two-year notice of withdrawal, and paid Tri-State its CTP upon the date of its withdrawal. *Tri-State Generation and Transmission Ass'n, Inc*. 177 FERC ¶ 61,059 at P. 121 (Oct. 29, 2021) (Hearing Order).

33.     Basin protested the Modified CTP Methodology, specifically the lack of Board approval for withdrawals, and argued that the Commission should require both Tri-State Board approval and Basin approval for Eastern Interconnection Member withdrawal.  Basin argued that

> [T]he Commission should not allow Tri-State to implement a CTP methodology that does not provide for Board approval for the termination of a WESC because Basin Electric avers that it allows Tri-State to dispose of assets without the prior

written authorization required under Tri-State's Wholesale Power Contract with Basin Electric.

*Id.* at P. 109.

34.    FERC disagreed with Basin's argument regarding the Eastern Interconnection WPC, and, in its October 29, 2021 Hearing Order, accepted Tri-State's Modified CTP Methodology for hearing procedures in FERC Docket No. ER21-2818 without including either a Tri-State Board approval requirement or a Basin approval requirement. Thus, the Commission confirmed its prior holding that such unilateral veto power over Tri-State Member withdrawal was unjust and unreasonable. *Id.* at P. 121.

35.    Basin did not request rehearing or reconsideration of FERC's Hearing Order of October 29, 2021, nor did it further participate in discovery, briefing, or hearing procedures in the FERC CTP Docket No. ER21-2818.

36.    The Commission issued its Order on Initial Decision in Docket No. ER21-2818 on December 19, 2023, ("*Initial FERC Order*") affirming that it is just and reasonable for Tri-State Members, including NRPPD, to terminate their WESCs and withdraw from Tri-State. *Tri-State Generation and Transmission Association, Inc*., 185 FERC ¶ 61,201 (Dec. 19, 2023). The Initial FERC Order also determined the just and reasonable CTP Methodology pursuant to which Tri-State must calculate its Members' exit fees.

37.    On April 30, 2022, NRPPD gave its unconditional notice of intent to terminate its WESC effective May 1, 2024. *Initial FERC Order* at P. 308.

38.    In the Initial FERC Order, the Commission explicitly deferred ruling on whether NRPPD's withdrawal from Tri-State would cause a breach of Tri-State's WPC with Basin, noting that "[w]e decline to address whether there has been a breach of the Basin Eastern Requirements

PPA, because that issue is not before the Commission in this proceeding." *Initial FERC Order*, at P. 554 n. 900.

39.      NRPPD then filed a new complaint to obtain the Commission's ruling on Basin's breach of contract claims. Basin was a full and complete participant in that proceeding and raised arguments as to why it believed that NRPPD's withdrawal from Tri-State would cause a breach of Tri-State's Wholesale Power Contract with Basin. *See* Contract Claim Order, PP. 38-51; 72-79. The Commission explicitly found that NRPPD's withdrawal from Tri-State would not violate the WPC between Tri-State and Basin. *Id.*, P. 82.

40.      Having lost with FERC, Basin twice sought to collaterally attack the Hearing Order by suing Tri-State in the U.S. District Court for the District of North Dakota. *Basin Elec. Power Coop. v. Tri-State Generation & Transmission Ass'n*, Case No. 3:21-cv-220, 2022 U.S. Dist. LEXIS 237838 (D.N.D. Oct. 31, 2022) ("*Basin I*"); *Basin Elec. Power Coop. v. Tri-State Generation & Transmission Ass'n,* No. 3:24-cv-8, 2024 U.S. Dist. LEXIS 115081 (D.N.D. Apr. 24, 2024) ("*Basin II*").

41.      Both *Basin I* and *Basin II* were unsuccessful. The North Dakota Court held that "FERC's agency expertise on the issue of early termination and filed rates, along with the need for uniformity and consistency in decision making, places this case within the doctrine of primary jurisdiction," *Basin I*, 2022 U.S. Dist. LEXIS 237838, *31 (D.N.D. Oct. 31, 2022), and that 16 U.S.C. § 825l(b) granted the Courts of Appeals "exclusive domain extend[ing] to all matters 'inhering in the controversy' of a final FERC order." *Basin II*, 2024 U.S. Dist. LEXIS 115081, *15 (D.N.D. Apr. 24, 2024).

42.      On March 25, 2024, NRPPD file a complaint with FERC against Basin requesting, *inter alia*, that the Commission institute a Section 206 proceeding and exercise primary jurisdiction

over the interpretation of the Tri-State Order and Eastern Interconnection WPC and hold that NRPPD's withdrawal from Tri-State is permissible under the Eastern Interconnection WPC.

43.    On May 8, 2024, Basin submitted its Response to NRPPD's complaint, which consisted of over 1,000 pages of argument and exhibits. On the same date, Tri-State also responded to NRPPD's complaint.

44.    On December 5, 2024, the Commission ruled on NRPPD's complaint. As an initial matter the Commission found it was appropriate for it to exercise  primary jurisdiction over this dispute to address the complaint. *Contract Claim Order*, 189 FERC ¶ 61,164 at P65. (December 5, 2024).  The Commission reasoned that "there is a need for uniformity of interpretation of the type of question raised by the dispute." *Id.* at P68, citing *Ark. La. Gas Co. v. Hall*, 7 FERC ¶ 61,175, at 61,322 (*Arkla*), *reh'g denied*, 8 FERC ¶ 61,031 (1979).

45.    The Commission concluded that:

> Leaving this matter for the courts to decide may result in inconsistent interpretations of the Basin Eastern Requirements PPA, as well as possibly Rate Schedule No. 281, as other Eastern Interconnection members may seek different, competing interpretations of the contract in other jurisdictions.  Moreover, section 9 of the Basin Eastern Requirements PPA is standard contract language, commonly referred to as a "*Shoshone* Amendment," that the Rural Utilities Service mandated that requirements contracts include as a condition of additional financing.  Thus, exercising primary jurisdiction is warranted to ensure a uniform interpretation of these matters.

*Id*. at P68 (footnotes omitted).

46.    The Commission further held that pursuant to section 9 of the Basin Eastern Requirements PPA, NRPPD's withdrawal from Tri-State does not violate that agreement, (*Id*. P72) "so long as Tri-State shall pay such pro rata portion of the outstanding indebtedness, as well as other obligations and commitments of Seller at the time existing."  That is, "the second and

third sentences of section 9 provide mechanisms for Tri-State to transfer assets, in the absence of Basin's approval, without breaching the Basin Eastern Requirements PPA." *Id*, P77.

47.     On or about July 16, 2025, Basin filed a Motion to Dismiss a different FERC complaint against it, alleging that it received funds from the United States Department of Agriculture ("USDA") Rural Utilities Service ("RUS"). *See* Affidavit of Christopher A. Johnson, which was attached to the Basin Motion and is also attached hereto as Exhibit 4. Upon information and belief, Basin received $928,000 in loan proceeds from RUS. Basin now contends that the receipt of RUS funds render it "not a 'public utility'" as that term is defined in Section 201(e) of the Federal Power Act, and thus no longer subject to FERC jurisdiction. Basin has also asserted that, because it would no longer be subject to FERC jurisdiction, it would no longer bound by the Contract Claim Order, which held that that section 9 of the Basin Eastern Requirements PPA does not prevent Northwest Rural's withdrawal from Tri-State under Rate Schedule No. 281.

48.     Basin's $928,000 RUS loan is dwarfed by other, non-RUS loans that it previously received in 2008, 2009 and 2011 in the amounts of $325M, $100M, and $204M, respectively. *See* RND0045AB8 98, RO3234 11180, and RO3234 17554 at https://www.usaspending.gov. The disparity in prior loan amounts and the new loan indicates deliberate action by Basin to end FERC jurisdiction rather than a business purpose for the loan.

49.     At least one utility has filed a complaint with FERC, alleging that Basin's miniscule RUS loan is a "nominal and sham transaction," is "void or ineffective" for purposes of removing Basin from FERC jurisdiction, and is inconsistent with the regulatory purposes of FPA Section 204. *See* Complaint of McKenzie Electric Cooperative (excluding exhibits), attached hereto as Exhibit 5.

50.    Specifically, at the time Basin sought the RUS loan, it was still a public utility, and Section 204 of the FPA prohibits a public utility (which Basin indisputably was prior to obtaining the RUS loan) from incurring debt unless FERC finds that the debt was obtained "for some lawful object, within the corporate purposes of the applicant and compatible with the public interest, which is necessary or appropriate . . . for such purposes."

51.    In addition to its contractual requirements under the Wholesale Power Contract, Basin is under an Order from FERC to calculate the Exit Fee owed by Tri-State when NRPPD exits Tri-State. In the Compliance Order, dated August 4, 2025, FERC determined that "the actual Final Eastern Interconnection PPA Amount needs to be determined early enough in the withdrawal process that a withdrawing member can meaningfully evaluate its options" and the "process must be completed sufficiently in advance of the withdrawal date for the parties to make all necessary filings and for the Commission to approve the withdrawal agreement in a timely manner." *Tri-State Generation & Transmission Ass'n*, 193 FERC ¶ 61,109 at PP 58, 62.

52.    Accordingly, in order to exercise its contractual rights, NRPPD sent Basin a demand letter on August 14, 2025 (the "August 14 Letter") outlining Basin's obligations and noting that "Basin's refusal to provide Tri-State with an Exit Fee calculation has prevented Tri-State from providing the same calculation to NRPPD no later than June 30, 2025, as it was required to do so." A true and correct copy of the August 14 Letter is attached hereto as Exhibit 6. The August 14 Letter thereby demanded "Basin to provide this Exit Fee calculation to Tri-State no later than August 29, 2025." *See* Exhibit 6.

53.    On August 27, 2025, Basin responded confirming its continued refusal to provide the Exit Fee calculation (the "August 27 Letter"). A true and correct copy of the August 27 Letter is attached hereto as Exhibit 7.

54.     Basin has also taken other wrongful measures attempting to prevent NRPPD's withdrawal from the Tri-State WESC. For instance, in order to effectuate any transfer of NRPPD's wholesale power provider, NRPPD's power load registration must be changed at the Southwest Power Pool (the "SPP"). Basin, however, has refused to request such registration change. Basin asserts that it "does not authorize and objects to this transfer of NRPPD's load from Basin to [The Energy Authority ("TEA")], and Basin will not take any action to facilitate any such transfer." *See* December 4, 2023 letter from Basin to SPP, attached hereto as Exhibit 8.

55.     Given FERC's directive that the exit fee must be calculated "early" in the withdrawal process, Basin's delay and refusal to provide an Exit Fee or to file to request a change in NRPPD's wholesale power provider at the SPP will effectively deny NRPPD's absolute right to withdraw from Tri-State, a right the FERC found to be just and reasonable.

## FIRST CAUSE OF ACTION

### (Declaratory Relief – Res Judicata and Collateral Estoppel)

#### *Against All Defendants*

56.     NRPPD repeats and realleges paragraphs 1 through 55 as if recited herein.

57.     In a case of actual controversy within its jurisdiction, this Court may declare the rights and other legal relations of any interested party seeking declaratory judgment, whether or not further relief is sought.  *See* 28 U.S.C. § 2201 (2025).  Further necessary or proper relief stemming from the declaratory judgment or decree may be granted.  *See* 28 U.S.C. § 2202 (2025).

58.     Basin has demonstrated through its words and actions that it does not believe that is obligated to follow the Contract Claim Order previously issued by FERC.

59.     Contrary to Basin's assertions, the doctrine of res judicata (also known as claim preclusion) and collateral estoppel (also known as issue preclusion) "bars a party from relitigating an issue once it has suffered an adverse determination on the issue." *Park Lake Res. Ltd. Liab. v. U.S. Dep't of Agric.*, 378 F.3d 1132, 1136 (10th Cir. 2004). Under the doctrines of res judicata and collateral estoppel, the Commission's determinations regarding the Eastern Interconnection members' CTP applies to all parties to the proceeding, including Basin, Tri-State and NRPPD, unless altered on direct appeal. *Smith v FERC*, Case No. 05-1572, (1st Cir. July 7, 2005), attached hereto as Exhibit 9.

60.     "Res judicata is when 'a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action.'" *Saylor v. Jeffreys*, 131 F.4th 864, 866 (8th Cir. 2025) (*citing Yankton Sioux Tribe v. U.S. Dep't of Health & Hum. Servs.*, 533 F.3d 634, 639 (8th Cir. 2008)). Res Judicata applies when: "(1) the first suit resulted in a final judgment on the merits; (2) the first suit was based on proper jurisdiction; (3) both suits involve the same parties (or those in privity with them); and (4) both suits are based upon the same claims or causes of action." *Saylor*, 131 F.4th at 866 (*citing Elbert v. Carter*, 903 F.3d 779, 782 (8th Cir. 2018)).

61.     Nebraska law, which governs the WPC, similarly holds that agency determinations are res judicata and may not be relitigated. *Moulton v. Board of Zoning Appeals for City of Lincoln, Neb.*, 251 Neb. 95, 101-02, 555 N.W.2d 39, 45 (1996); *County of Adams v. Nebraska State Board of Equalization and Assessment*, 252 Neb. 847, 854, 566 N.W.2d 392, 397 (1997).

62.     Res Judicata precludes Basin from disputing the *Initial FERC Order* and the *Contract Claim Order* or collaterally attacking agency determinations regarding those Orders.

The Orders (1) resulted in a final judgment on the merits; (2) were properly jurisdictional at the time they were rendered; (3) involved the same parties as the instant case; and (4) relate to the same contract construction claims at issue here.  Basin was a full participant in the FERC Proceedings that resulted in the *Initial FERC Order* and the *Contract Claim Order*.  In those FERC Proceedings, Basin vigorously argued its position and asserted, among other things, that Tri-State was contractually prohibited from allowing NRPPD from leaving Tri-State. In other words, Basin had a full and fair opportunity to litigate its position at FERC. Contract Claim Order, PP 43 ("Basin argues that section 14--not section 9--is the relevant "termination provision" of the Basin Eastern Requirements PPA, which prohibits termination of the contract prior to December 31, 2050."). The Commission explicitly rejected this argument, concluding that Northwest Rural's withdrawal from Tri-State does not cause a breach to the Basin Eastern Requirements PPA."  *Contract Claim Order*, PP. 82.

63.    Similarly, the doctrine of Collateral Estoppel "means that when an issue of ultimate fact has been determined by a final judgment, that issue cannot again be litigated between the same parties in a future lawsuit." *Softchoice Corp. v. MacKenzie*, 636 F. Supp. 2d 927, 936 (D. Neb. 2009) (*citing Woodward v. Andersen*, 261 Neb. 980, 627 N.W.2d 742 (2001).

64.    In the Contract Claim Order, FERC determined that "Northwest Rural's withdrawal from Tri-State does not cause a breach to the Basin Eastern Requirements PPA." *Contract Claim Order*, PP. 82.

65.    Accordingly, NRPPD is entitled to a declaration that Basin and Tri-State are barred from relitigating the issue of breach of contract, and are bound by the determination of the Initial FERC Order that it is just and reasonable for Eastern Interconnection Tri-State Members, including NRPPD, to terminate their WESCs and withdraw from Tri-State.

66.     NRPPD is further entitled to a declaration that Northwest Rural's withdrawal from Tri-State does not cause a breach to Basin-Tri-State Wholesale Power Agreement.

## SECOND CAUSE OF ACTION

### (Breach of Contract)

### *Against Basin Electric Power Cooperative*

67.     NRPPD repeats and realleges paragraphs 1 through 66 as if recited herein.

68.     NRPPD is a member of Tri-State and has sought to withdraw from its WESC with Tri-State.

69.     Basin and Tri-State entered into a valid and binding written contract, namely the Wholesale Power Contract. Section 9 of the Wholesale Power Contract addresses the calculation of payments when Tri-State members (including NRPPD) withdraw from or terminate their contract with Tri-State. Specifically, Section 9 requires Basin to determine the Exit Fee, payment of which is a condition of withdrawal.

70.     Nebraska law governs the Wholesale Power Contract. *See* WPC, § 17. Under Nebraska law, a third-party beneficiary is entitled to recover damages resulting from a breach of contract that directly affects its rights under the contract, provided that the third-party beneficiary's rights are expressly stipulated or reasonably intended in the contract. *Properties Inv. Group v. Applied Communications, Inc.*, 242 Neb. 464 (1993).

71.     NRPPD is not a party to the Wholesale Power Contract between Basin and Tri-State, but is a third-party beneficiary of the Wholesale Power Contract – as a Member of Tri-State and as a Class C member of Basin – pursuant to Section 11 thereof. *See* WPC, § 11 ("Tri-State acknowledges that Seller's other members are third party beneficiaries solely with respect to Sections 9 and 10" of the WPC).

72.     The language of the Wholesale Power Contract, therefore, contemplates and provides for NRPPD's rights as a third-party beneficiary, including the right to enforce compliance with the withdrawal procedures outlined in Sections 9.

73.     Basin has breached its obligations under the Wholesale Power Contract by, among other things, failing and refusing to determine the Exit Fee.

74.     FERC has noted section 9 of the Wholesale Power Contract states that Basin obligations "shall not be unreasonably withheld, delayed or conditioned." *Tri-State Generation and Transmission Association, Inc*., 192 FERC ¶ 61,109 at note 111 (August 4, 2025).

75.     The purpose of Sections 9 and 10 of the WPC is to facilitate the orderly withdrawal of Tri-State members, including NRPPD. By refusing to determine the Exit Fee, Basin has obstructed NRPPD's ability to complete its withdrawal, thereby defeating the essential purpose of these provisions.

76.     The refusal by Basin to determine the Exit Fee has caused harm to NRPPD by delaying or obstructing its withdrawal process.

### **THIRD CAUSE OF ACTION**

### **(Tortious Interference with a Contract)**

### ***Against Basin Electric Power Cooperative***

77.      NRPPD repeats and realleges paragraphs 1 through 76 as if recited herein.

78.     NRPPD and Tri-State entered into a valid and binding written contract, namely the Wholesale Electric Services Contract.

79.     Tri-State purchases wholesale power from Basin, pursuant to the Wholesale Power Contract, and then sells that wholesale power to its Eastern Interconnection Members, including NRPPD, under the terms of its Wholesale Electric Services Contract.

80.    Basin is under an obligation to calculate the Exit Fee owed by Tri-State when NRPPD exits Tri-State. *See* <u>Exhibit 6</u>.

81.    FERC has determined that NRPPD has an absolute right to exit the Wholesale Electric Services Contract with Tri-State and the right to exit is just and reasonable and in the public interest.

82.    Basin has direct knowledge of the Wholesale Electric Services Contract between Tri-State and NRPPD. In fact, Basin has outwardly resisted NRPPD's withdrawal from the Tri-State Wholesale Electric Services Contract. *See Basin Elec. Power Coop. v. Tri-State Generation & Transmission Ass'n*, No. 3:24-cv-8, 2024 U.S. Dist. LEXIS 115081, *11 (D.N.D. Apr. 24, 2024) ("*Basin II*").

83.    Basin's failure and refusal to determine the Exit Fee, a critical component of NRPPD's withdrawal process, constitutes an intentional act that obstructs NRPPD's ability to exercise its contractual rights under the Wholesale Electric Services Contract.  *See* <u>Exhibit 7</u>.

84.    Additionally, Basin's failure and refusal to request NRPPD's power load registration change constitutes an intentional act that also obstructs NRPPD's ability to exercise its contractual rights under the Wholesale Electric Services Contract. *See* <u>Exhibit 8</u>.

85.    Basin's refusal to determine the Exit Fee and refusal to request the transfer of NRPPD's power load has caused harm to NRPPD by delaying or obstructing its withdrawal.

## <u>FOURTH CAUSE OF ACTION</u>

### (Tortious Interference with a Business Relationship)

### *Against Basin Electric Power Cooperative*

86.     NRPPD repeats and realleges paragraphs 1 through 85 as if recited herein.

87.     The Wholesale Electric Services Contract between NRPPD and Tri-State represents a valid business relationship.

88.     Tri-State purchases wholesale power from Basin, pursuant to the Wholesale Power Contract, and then sells that wholesale power to its Eastern Interconnection Members, including NRPPD, under the terms of its Wholesale Electric Services Contract.

89.     Basin is under an obligation to calculate the Exit Fee owed by Tri-State when NRPPD exits Tri-State. *See* Exhibit 6.

90.     FERC has determined that NRPPD has an absolute right to exit the Wholesale Electric Services Contract with Tri-State and the right to exit is just and reasonable and in the public interest.

91.     Basin has direct knowledge of the business relationship between Tri-State and NRPPD. In fact, Basin has outwardly resisted NRPPD's withdrawal from the Tri-State Wholesale Electric Services Contract. *See Basin Elec. Power Coop. v. Tri-State Generation & Transmission Ass'n*, No. 3:24-cv-8, 2024 U.S. Dist. LEXIS 115081, *11 (D.N.D. Apr. 24, 2024) ("*Basin II*").

92.     Basin's failure and refusal to determine the Exit Fee, a critical component of NRPPD's withdrawal process, constitutes an intentional act that interferes with the contractual termination provision that is part of the business relationship between NRPPD and Tri-State and nullifies NRPPD's contractual rights under the Wholesale Electric Services Contract. *See* Exhibit 7.

93.     Additionally, Basin's failure and refusal to request NRPPD's power load registration change constitutes an intentional act that interferes with the contractual termination

provision that is part of the business relationship between NRPPD and Tri-State and nullifies NRPPD's contractual rights under the Wholesale Electric Services Contract. *See* Exhibit 8.

94.     Basin's refusal to determine the Exit Fee and refusal to grant the transfer of NRPPD's power load has caused harm to NRPPD by delaying or obstructing its withdrawal process.

## **FIFTH CAUSE OF ACTION**

### **(Tortious Interference with a Prospective Business Relationship)**

### ***Against Basin Electric Power Cooperative***

95.     NRPPD repeats and realleges paragraphs 1 through 94 as if recited herein.

96.     Upon its withdrawal from the Tri-State WESC, NRPPD intends to transfer its power load from Basin to Nebraska Public Power District ("NPPD"). As such, NRPPD has a reasonable expectation of entering into a legitimate business relationship with NPPD.

97.     Basin has direct knowledge of the prospective business relationship between NRPPD and NPPD. In fact, Basin has outwardly resisted NRPPD's transfer of its power load from Basin to NPPD. *See* Exhibit 8 ("Based on the foregoing, we encourage and advise SPP to refrain from … facilitating NRPPD's termination of its WESC or the transfer of its load to NPPD via TEA").

98.     Basin's failure and refusal to authorize NRPPD's power load registration change constitutes an intentional act that disrupts the prospective business relationship between NRPPD and NPPD. *See* Exhibit 8.

99.     Basin's refusal to grant the transfer of NRPPD's power load has caused harm to NRPPD by delaying, obstructing, and/or preventing an orderly transition of its power load to its intended generator: NPPD.

## PRAYER FOR RELIEF

WHEREFORE, NRPPD respectfully prays that the court enter judgment against Basin and in favor of NRPPD, as follows:

A.      Declaring that Basin and Tri-State remain bound by the holding of the Initial FERC Order and the Contract Claim Order, and are barred by the doctrines of res judicata and collateral estoppel from making any argument to the contrary;

B.      Declaring that NRPPD is permitted to terminate its WESC and withdraw from Tri-State;

C.      Declaring that such a withdrawal does not breach the Wholesale Power Agreement between Basin and Tri-State;

D.      Entering injunctive and other equitable relief, pursuant this Court's equitable powers;

E.      Compensatory damages as to be determined at trial;

F.      Consequential damages as to be determined at trial; and

G.      Ordering such other and further relief as the Court may deem just, proper and equitable.

 DATED: September 10, 2025

<div style="margin-left:40%">

By:     */s/ David Jarecke*
        David Jarecke, #20088
        Ellen Kreifels, #25481
        Blankenau Wilmoth Jarecke LLP
        2900 South 70th Street, Suite 150
        Lincoln, NE 68506
        402.4758.7080
        dave@bwjlawgroup.com
        ellen@bwjlawgroup.com

</div>

By:    */s/ Patrick T. Vint*
Patrick T. Vint, #26176
Woods Aitken LLP
10250 Regency Parkway, Suite 525
Omaha, NE 68164
402.898.7400
pvint@woodsaitken.com

By:    */s/ Richard M. Lorenzo*
Richard Lorenzo (*admitted pro hac vice*)
J.D Taliaferro (*admitted pro hac vice*)
Nicole Travers (*admitted pro hac vice*)
Loeb & Loeb LLP
901 New York Avenue NW
Washington, DC 20001
Tel.: 202.618.5000
rlorenzo@loeb.com
jtaliaferro@loeb.com
ntravers@loeb.com
*Attorneys for the Plaintiff Northwest Rural Public Power District*

## CERTIFICATE OF SERVICE

I hereby certify that on September 10, 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send an electronic copy of the filing by email to all counsel of record.

*/s/ Patrick T. Vint*
Patrick T. Vint