**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEBRASKA**

| | |
|---|---|
| NORTHWEST RURAL PUBLIC POWER DISTRICT, <br><br>                  Plaintiff, <br><br>        v. <br><br> BASIN ELECTRIC POWER COOPERATIVE and TRI-STATE GENERATION AND TRANSMISSION ASSOCIATION, INC. <br><br>                  Defendants. | Case No. 4:25-cv-03153-SMB-RCC |

**TRI-STATE GENERATION AND TRANSMISSION ASSOCIATION, INC.'S BRIEF**
**IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S FIRST CAUSE OF ACTION**

Northwest Rural Public Power District (NRPPD) asserts a single claim against Tri-State Generation and Transmission Association, Inc. asking this Court to declare, apropos of nothing, that Tri-State is bound for all purposes by orders currently on appeal in the D.C. and Tenth Circuits. To be clear, Tri-State has never argued in any forum that it is not bound by the orders. Instead, NRPPD speculates that Basin Electric Power Cooperative or Tri-State **could** make that argument in some unidentified proceeding at some unidentified future time. On that basis, it asks this Court to declare preemptive victory for NRPPD and forever bar Basin and Tri-State from ever making any argument "contrary to" these orders. This is a transparent request for an advisory opinion that fails to present a justiciable controversy under Article III.

In addition to this obvious jurisdictional defect, NRPPD fails to present a claim against Tri-State upon which relief may be granted. It asks this Court to apply issue and claim preclusion in a vacuum, without any justiciable claims against Tri-State against which the Court can compare the orders. The Court cannot find identity of issues or claims in the absence of live

claims for relief. NRPPD also asks this Court to dramatically expand the holdings in those orders without alleging any facts or pleading any claims that would entitle it to that relief.

Finally, even if this Court had jurisdiction, and even if NRPPD had stated a plausible claim, this Court has no obligation to exercise jurisdiction over a declaratory judgment claim and should decline to do so here. NRPPD's request for prospective declaratory victory would not serve a useful purpose to clarify the parties' rights or terminate uncertainty. It is a transparent attempt at procedural manipulation that will not further the interests of efficiency and finality preclusion is intended to promote.

For these reasons, Tri-State asks the Court to dismiss NRPPD's First Cause of Action – Declaratory Relief – Res Judicata and Collateral Estoppel.

## BACKGROUND

The fundamental questions underlying NRPPD's request for declaratory relief concern the terms and conditions under which members of the Tri-State cooperative may terminate their relationship with Tri-State and the impact of those terminations on Tri-State's other contractual relationships.

### 1. Tri-State sells wholesale power to NRPPD under a long-term contract subject to FERC regulation.

Tri-State is an electric generation and transmission cooperative owned by members in four states. Exhibit 2, *Tri-State Generation & Transmission Ass'n, Inc.*, 185 FERC ¶ 61,201 ("Initial FERC Order") ¶ 2, (cited at, *e.g.*, First Am. Compl. ¶ 6).[1] Tri-State's utility members are

---

[1] This Court may consider the federal agency orders and filings incorporated by reference in the pleadings. First Am. Compl., *passim*. This Court may also take judicial notice of federal agency orders and filings. *See Williams v. Emps. Mut. Cas. Co.*, 845 F.3d 891, 903–04 (8th Cir. 2017) (holding courts may take judicial notice of "matters of public record, orders, items appearing in the record of the case" and other facts "not subject to reasonable dispute because [they] . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned"). Alternatively, the Court may accept evidence beyond the factual allegations in the

electric distribution cooperatives and public power districts who sell electricity to consumers. Exhibit 3, *Tri-State Generation & Transmission Ass'n, Inc.*, 180 FERC ¶ 63,034 ("Initial Decision Public") ¶¶ 52–53. NRPPD is one of Tri-State's utility members. First Am. Compl. ¶¶ 1–2, ECF No. 31. Like all Tri-State's utility members, NRPPD is party to a Wholesale Electric Service Contract (WESC) with Tri-State under which NRPPD agreed to purchase 95% of its electricity from Tri-State for a fixed term. *Id.* ¶ 1; Initial FERC Order ¶ 2, Ex. 2. Tri-State uses member WESCs as collateral to finance the extensive infrastructure needed to serve its utility members. *United Power, Inc. v. Fed. Energy Regul. Comm'n*, 49 F.4th 554, 557 (D.C. Cir. 2022). Terminating a WESC before the end of its term undermines Tri-State's ability to plan and finance that necessary infrastructure. *Id.* As a result, members must make a contract termination payment to terminate their WESC before the end of the contract term and withdraw from the Tri-State cooperative. *Id.*; Exhibit 4, *N. Rural Pub. Power Dist. v. Basin Elec. Power Coop.*, 189 FERC ¶ 61,164 ("Contract Claim Order") ¶¶ 2–7, (cited at, *e.g.*, First Am. Compl. ¶ 8).

### 2. Tri-State purchases some of its power from Basin, which asserts an interest in the terms of NRPPD's withdrawal from Tri-State.

Tri-State obtains a portion of the power it sells to its members through a Wholesale Power Contract (WPC) with Basin. First Am. Compl. ¶ 2, ECF No. 31. The WPC includes terms concerning the consequences of Tri-State members withdrawing from the cooperative. *Id.* ¶ 3. As a result, Basin has asserted an interest and participated in proceedings concerning Tri-State member withdrawals before the Federal Energy Regulatory Commission (FERC) and in other

---

Complaint to decide Tri-State's Rule 12(b)(1) Motion. *See Johnson v. United States*, 534 F.3d 958, 962 (8th Cir. 2008) ("A district court has the authority to dismiss an action for lack of subject matter jurisdiction on any one of three separate bases: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." (quotations omitted)).

forums. *See*, *e.g.*, Initial FERC Order ¶¶ 31–32, Ex. 2; Contract Claim Order ¶¶ 38–51, Ex. 4; *Basin Elec. Power Coop. v. Tri-State Generation & Transmission Ass'n, Inc.*, Case No. 3:21-cv-220, 2022 WL 18622225 (D.N.D. Oct. 31, 2022) ("*Basin I*"); *Basin Elec. Power Coop. v. Tri-State Generation & Transmission Ass'n, Inc.*, No. 3:24-cv-8, 2024 WL 3202167 (D.N.D. Apr. 24, 2024) ("*Basin II*").

### 3. FERC has exclusive jurisdiction over the terms, conditions, and payments related to NRPPD's withdrawal from Tri-State.

As NRPPD's Amended Complaint suggests, the terms, conditions, and payments associated with member withdrawals are within FERC's exclusive jurisdiction and have been the subject of myriad FERC proceedings. First Am. Compl. ¶¶ 6–10, 25–39, ECF No. 31; *see also* Initial FERC Order ¶¶ 3–5, Ex. 2 (describing history of FERC proceedings to determine reasonable withdrawal terms and conditions); Initial Decision Public ¶¶ 2–51, Ex. 3. FERC has also asserted primary jurisdiction over related contract construction questions. Contract Claim Order ¶¶ 65–69, Ex. 4. NRPPD has given unconditional notice of intent to terminate its WESC and withdraw from Tri-State. First Am. Compl. ¶ 37, ECF No. 31. The terms and conditions of withdrawal, including the payment NRPPD must make, are subject to FERC's exclusive jurisdiction and remain the subject of ongoing proceedings, including appeals of the Initial FERC Order and Contract Claim Order to the Tenth and D.C. Circuit Courts, respectively. *See* Contract Claim Order ¶¶ 4–10, 71, Ex. 4 (directing further compliance filings and deferring some arguments for resolution in another FERC docket); *Tri-State Generation & Transmission Ass'n, Inc. v. Fed. Energy Reg. Comm'n*, Nos. 24-9516, 24-9532, 24-9538 (10th Cir. docketed Mar. 28, 2024) (consolidated cases appealing Initial FERC Order); *Basin Elec. Power Corp. v. Fed. Energy Reg. Comm'n*, Docket No. 25-1060 (D.C. Cir. docketed Feb. 13, 2025) (Basin appeal of Contract Claim Order).

**4.    NRPPD asks this Court to issue broad declarations expanding two FERC orders concerning the terms of NRPPD's withdrawal from Tri-State.**

NRPPD's request for declaratory judgment concerns the application of two FERC Orders. The first, NRPPD calls the "Initial FERC Order." First Am. Compl. ¶ 6, ECF No. 31. The Initial FERC Order is a 247-page order in which FERC reviewed an Initial Decision issued by an administrative law judge (ALJ) determining the "terms and conditions under which Members of Tri-State . . . may terminate their [WESCs] and membership in Tri-State." Initial Decision Public ¶ 1, Ex. 3; Initial FERC Order ¶ 1, Ex. 2 ("This case is before us on exceptions to an Initial Decision issued on September 29, 2022."). The Initial FERC Order was issued as part of an ongoing administrative process involving expert analysis of complex methodologies to determine how to calculate just, reasonable, and not unduly discriminatory withdrawal payments under the Federal Power Act (FPA), 16 U.S.C. §§ 824–825u. *See* Initial FERC Order ¶¶ 2–5, Ex. 2; Initial Decision Public ¶¶ 1–51. The Initial FERC Order and the question of NRPPD's and other member's withdrawal payments remain the subject of ongoing proceedings. Contract Claim Order ¶¶ 4–10, 71, Ex. 4; *Tri-State*, Docket Nos. 24-9516, 24-9532, 24-9538; *Basin Elec.*, Docket No. 25-1060.

NRPPD calls the second FERC order the "Contract Claim Order." First Am. Compl. ¶ 8, ECF No. 31. This thirty-six-page order resolved a complaint by NRPPD asking FERC to determine that (1) FERC has primary jurisdiction over the WPC between Tri-State and Basin; (2) NRPPD's withdrawal from Tri-State does not violate the WPC; and (3) if NRPPD's withdrawal violates the WPC, the WPC is unjust, unreasonable, and unduly discriminatory under the FPA. Contract Claim Order ¶ 1, Ex. 4. At NRPPD's request, FERC agreed to exercise primary jurisdiction to construe the WPC and held section 9 provides a mechanism by which Tri-State can comply with the WPC upon NRPPD's withdrawal. Specifically, FERC ruled NRPPD's

withdrawal will not violate the WPC **if** NRPPD's portion of electricity is not a "substantial portion" of certain assets under the WPC. *Id.* ¶ 76. Alternatively, if those assets are a "substantial portion," Tri-State can comply with the WPC by paying Basin a "pro rata portion of the outstanding indebtedness, . . . obligations and commitments" upon NRPPD's withdrawal. *Id.* Because NRPPD can withdraw without necessarily triggering a breach by Tri-State, FERC concluded the WPC does not violate the FPA and dismissed NRPPD's complaint. *Id.* ¶ 82.

Neither the Initial FERC Order nor the Contract Claim Order (collectively, the FERC Orders) goes as far as NRPPD's request for declaratory relief here. Neither determined Basin or Tri-State was subject to FERC jurisdiction or bound by the Orders. Neither held without qualification "that NRPPD is permitted to terminate its WESC and withdraw from Tri-State" or that "such a withdrawal does not breach the [WPC] between Basin and Tri-State" under any circumstances. *See* First Am. Compl. 23, ECF No. 31. Both orders incorporate qualifications and conditions to any withdrawal, including compliance with Rate Schedule No. 281 and section 9 of the WPC. *See* Contract Claim Order ¶¶ 78–79, Ex. 4.

NRPPD does not allege Tri-State has violated the FERC Orders or asserted in any proceeding it is not bound by the FERC Orders. Even so, NRPPD asks this Court to declare that "Tri-State remain[s] bound by the holding of the Initial FERC Order and the Contract Claim Order, and [is] barred by the doctrines of res judicata and collateral estoppel from making **any** argument to the contrary" and to declare, without qualification, that "NRPPD is permitted to terminate its WESC and withdraw from Tri-State" and "such a withdrawal does not breach the [WPC]." First Am. Compl. 23, ECF No. 31 (emphasis added).

**ARGUMENT**

This Court can dismiss NRPPD's declaratory judgment claim on any of three independent grounds.

**I.     This Court lacks jurisdiction over NRPPD's declaratory judgment claim because it fails to present an actual controversy.**

First, NRPPD's declaratory judgment claim presents no justiciable controversy for this Court to resolve. NRPPD alleges no actual dispute. It seeks a declaration that would not resolve any existing controversy or have any consequences on the parties' existing legal rights. It only asks this Court to issue an advisory opinion that it could leverage in potential future litigation.

**A.     Federal courts have jurisdiction only over concrete disputes that can be finally resolved by the relief requested.**

A court must dismiss a claim if it lacks subject matter jurisdiction. *Frenchman Cambridge Irrigation Dist. v. Heineman*, 974 F. Supp. 2d 1264, 1273–74 (D. Neb. 2013) (citing *Wheeler v. St. Louis Sw. Ry.*, 90 F.3d 327, 329 (8th Cir. 1996)); Fed. R. Civ. P. 12(b)(1) (authorizing motion to dismiss for lack of subject-matter jurisdiction). As the party asserting jurisdiction, NRPPD bears the burden to establish jurisdiction. *See id.* at 1274 (citing *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974)).

Under the Federal Declaratory Judgments Act, a federal court "may declare the rights and other legal relations of any interested party seeking a declaration," in "a case of actual controversy within its jurisdiction." 28 U.S.C. 2201(a). The Act is "procedural only," so the term "actual controversy" encompasses only "cases" and "controversies" under Article III. *Aetna Life Ins. of Hartford, Conn. v. Haworth*, 300 U.S. 227, 239–40 (1937); U.S. Const. art. III § 2.

To invoke federal jurisdiction for declaratory relief, therefore, a plaintiff must articulate a "definite and concrete" dispute between parties with "adverse legal interests" that can be resolved by "specific relief through a decree of a conclusive character." *Pub. Serv. Comm'n of*

*Utah v. Wycoff Co.*, 344 U.S. 237, 242–43 (1952). "The disagreement must not be nebulous or contingent but must have taken on fixed and final shape so that a court can see what legal issues it is deciding, what effect its decision will have on the adversaries, and some useful purpose to be achieved in deciding them." *Id.* at 244. "It is not the role of federal courts to resolve abstract issues of law." *Columbian Fin. Corp. v. BancInsure, Inc.*, 650 F.3d 1372, 1376 (10th Cir. 2011); *see also Wycoff*, 344 U.S. at 242–43 (holding federal courts may not issue opinions "advising what the law would be upon a hypothetical set of facts" (quotations omitted)).

### B. NRPPD's declaratory judgment claim does not present a concrete dispute and would not finally resolve any controversy.

NRPPD seeks precisely the kind of advisory opinion Article III prohibits. It alleges:

- NRPPD is a member of Tri-State and purchases electricity from Tri-State under a WESC. First Am. Compl. ¶¶ 1, 25, ECF No. 31.

- Tri-State purchases wholesale power from Basin under a WPC. *Id.* ¶¶ 2, 25.

- NRPPD has given notice of its intent to withdraw from the Tri-State cooperative. *Id.* ¶ 37.

- In December 2023, FERC issued an "Initial FERC Order" determining "the just and reasonable CTP Methodology pursuant to which Tri-State must calculate its Members' exit fees." *Id.* ¶ 36.

- In December 2024, FERC issued a "Contract Claim Order" holding that "as long as the parties meet the requirements of section 9, then Tri-State would not be in breach of the [WPC] following [NRPPD's] withdrawal." *Id.* ¶ 8 (quoting Contract Claim Order ¶ 78, Ex. 4).

- Basin has attempted, unsuccessfully, to "collaterally attack" FERC orders in federal court. *Id.* ¶¶ 11, 40–41.

- In July 2025, Basin moved to dismiss a **different** FERC proceeding on the ground that Basin is no longer subject to FERC jurisdiction under the Federal Power Act. *Id.* ¶ 47.

- "Tri-State's CEO . . . said . . . that Basin was attempting to remove itself from FERC jurisdiction by borrowing a small loan from RUS." *Id.* ¶ 14.[2]

- Basin has "taken other wrongful measures attempting to prevent NRPPD's withdrawal from Tri-State" such as refusing to facilitate a power load registration change. *Id.* ¶ 54.

Based on these allegations, NRPPD asks this Court to declare:

- "Basin and Tri-State remain bound by the holding of the Initial FERC Order and the Contract Claim Order, and are barred by the doctrines of res judicata and collateral estoppel from making any argument to the contrary";

- "NRPPD is permitted to terminate its WESC and withdraw from Tri-State"; and

- "such a withdrawal does not breach the [WPC] between Basin and Tri-State."

*Id.* at 23.

In short, NRPPD alleges Basin **could**—at some unknown date, in some unknown forum, in the context of some set of undefined claims, among unidentified parties, seeking unknown relief—argue it is not bound by FERC's Orders.[3] Based on that remote and hypothetical possibility, NRPPD asks this Court to issue a blanket declaration that Basin and Tri-State are bound by FERC's orders under **all** circumstances—in all forums, in the context of all claims, among any parties, seeking any relief. It further asks this Court to declare that Basin and Tri-State are forever barred from making any argument whatsoever otherwise, in any context. This is not a justiciable controversy for two reasons.

---

[2] Notably, NRPPD's Amended Complaint omits an allegation found in its original Complaint that Basin "verbally asserted that because it would no longer be subject to FERC jurisdiction, it would no longer bound [sic] by the Contract Claim Order." Compl. ¶ 12, ECF No. 1. This alteration to NRPPD's allegations renders any potential dispute even more remote and nebulous.

[3] NRPPD does not suggest **Tri-State** has ever asserted the Contract Claim Order is not binding on it or Basin. Neither does NRPPD suggest Basin or Tri-State have asserted they are not bound by the Initial FERC Order. Yet NRPPD asks the Court to declare both Basin and Tri-State are bound by both orders.

First, NRPPD articulates no concrete dispute against Tri-State. It does not allege Tri-State has violated the FERC Orders, has sought or threatened to seek a declaration that it is not bound by the Orders, or has ever argued it is not bound by FERC's Orders.[4] At most, NRPPD suggests **Basin could** make that argument at some undefined future point. This is not a "definite and concrete" dispute in "fixed and final shape." *See Wycoff*, 344 U.S. at 242, 244. NRPPD seeks to preclude Tri-State from asserting a "broad class of potential claims" that could "raise any number of issues—some of which may never have been litigated in prior actions—or they could never be filed at all." *See Orix Credit All., Inc. v. Wolfe*, 212 F.3d 891, 896–98 (5th Cir. 2000) (affirming dismissal because complaint seeking declaratory judgment to bar future claims hinged on a series of unrealized factual contingencies that were unlikely to occur and it was unclear what legal issues might be presented in a future case). The "unasserted, unthreatened, and unknown claims" NRPPD hypothesizes "do not present an immediate or real threat . . . such that declaratory relief is proper." *See id.* at 896. This series of what-ifs has not "matured to a point where [the Court] can see what, if any, concrete controversy will develop." *See Wycoff*, 344 U.S. at 245. It is inadequate for the Court to appreciate "what legal issues it is deciding, what effect its decision will have on the adversaries, and some useful purpose to be achieved in deciding them." *See id.* at 244.

Second, NRPPD fails to articulate any legal effect the requested declaration would have or any purpose to be achieved by its issuance. A declaration stating Tri-State is bound by FERC's Orders would have no impact on the parties under present facts. It would not entitle NRPPD to any further relief in this or any other forum. It would not resolve any live dispute about their

---

[4] Nor does NRPPD allege Tri-State has any interest in avoiding FERC's orders—unlikely given the Contract Claim Order held Tri-State would **not** breach the WPC with Basin upon NRPPD's withdrawal if the parties comply with section 9.

legal rights. It would have no real-world consequences. It would do nothing more than "advis[e] what the law would be upon a hypothetical state of facts." *See id.* at 242–43 (quotations omitted); *see also Orix Credit*, 212 F.3d at 898 (holding a request for declaratory judgment to bar a potential motion for reconsideration would constitute an advisory opinion stating "what the law would be should the [defendants] (1) find documents that support a motion to reconsider, and (2) assert the legal issues that they included in the draft motion written two years ago"). "Federal courts do not render advisory opinions." *Orix Credit*, 212 F.2d at 898 (quotations omitted).

### C. Federal jurisdiction may not be abused to obtain prospective litigation advantage through advisory opinions.

NRPPD seeks this advisory opinion in an improper attempt to "win any [future] case before it is commenced" through a prospective declaration to "hold in readiness" for future potential litigation. *See Wycoff*, 344 U.S. at 245. NRPPD is not the first party to attempt this gambit, but the Supreme Court has consistently rejected this kind of gamesmanship.

In *Wycoff*, a party requested a declaration to "establish that, as presently conducted, [its] carriage of goods . . . is all interstate commerce." *Id.* at 244. The Court asked, "so what?" *Id.* No other relief was requested, and no other proceedings were pending. *Id.* "The carrier's idea seems to be that it can now establish the major premise of an exemption, not as an incident of any present declaration of any specific right or immunity, but to hold in readiness for use should [a state] Commission at any future time attempt to apply any part of a complicated regulatory statute to it." *Id.* at 245. The Court concluded the case presented no justiciable controversy. If the state commission acted in the future, "some further declaration would be necessary to complete any relief. The proposed decree [could] not end the controversy." *Id.* at 245–46. The Court directed dismissal. *Id.* at 249.

The Court's analysis and conclusion was similar in *Calderon v. Ashmus*, 523 U.S. 740 (1998). There, a federal prisoner sought a declaration that California's procedures for resolving prisoners' habeas corpus petitions did not qualify for an exemption under federal law. *Id.* at 742. The "underlying controversy" was whether the prisoner was entitled to federal habeas relief, but he did not seek habeas relief. *Id.* at 746. "Instead, respondent carved out of that claim only the question whether, when he sought habeas relief, California would be governed by Chapter 153 or Chapter 154[.]" *Id.* That was an improper attempt "to gain a litigation advantage by obtaining an advance ruling on an affirmative defense." *Id.* at 747. Any judgment "would not resolve the entire case or controversy . . . but would merely determine a collateral legal issue." *Id.* The Court again directed dismissal. *Id.* at 749.

Federal courts have consistently applied this line of authority to reject requests for prospective wins before any concrete dispute has arisen. *See Coffman v. Breeze Corps.*, 323 U.S. 316, 323–24 (1945) (affirming dismissal where declaratory judgment request was "but a request for an advisory opinion as to the validity of a defense" that was not before the court); *Marine Equip. Mgmt. Co. v. United States*, 4 F.3d 643, 647 (8th Cir. 1993) (affirming dismissal of complaint seeking "a declaration that [the plaintiffs] cannot be held liable to any unknown future litigants who claim to have been damaged"); *Columbian Fin. Corp.*, 650 F.3d at 1379–1381 ("[E]ven if all the relevant facts regarding a particular legal issue are known or knowable, a court does not have jurisdiction to resolve the issue unless that issue arises in a specific dispute having real-world consequences.") (collecting authority).

NRPPD's sole claim against Tri-State presents the same defects. NRPPD asks this Court to declare "Tri-State remain[s] bound by the holding of" FERC's Orders. First Am. Compl. 23, ECF No. 31. To quote *Wycoff*, "so what?" NRPPD does not seek that declaration as part of some

broader request for relief against Tri-State that would resolve a controversy and have real-world consequences on their legal relations. Tri-State has not attempted to avoid FERC's Orders or argued in any forum that they do not apply. NRPPD wants a declaration that it can "hold in readiness," just in case the issue ever comes up. *See Wycoff*, 344 U.S. at 245. That is not a proper basis to invoke federal jurisdiction, and NRPPD's declaratory judgment claim can and should be dismissed for this reason alone.

## II.     NRPPD fails to state a claim against Tri-State upon which relief may be granted.

Alternatively, NRPPD's request for declaratory judgment claim fails to state a claim upon which relief may be granted and should be dismissed under Federal Rule of Civil Procedure 12(b)(6) for two reasons. First, NRPPD cannot establish identity of issues or claims because it seeks no ultimate relief against Tri-State. This case presents no issues or claims to be precluded by the FERC Orders, and this Court cannot issue a declaration based on hypotheticals or assumptions that a future case might satisfy the elements of preclusion. Second, the declarations NRPPD requests exceed the FERC Orders it relies on, and NRPPD alleges no facts or claims that would allow this Court to extend FERC's Orders.

### A.     To state a claim, a party must allege facts that raise its right to relief above the speculative level.

A motion under Rule 12(b)(6) challenges the sufficiency of the plaintiff's complaint. The Court accepts the plaintiff's "specific factual allegations" as true but does not accept the plaintiff's legal conclusions.[5] *Brown v. Medtronic, Inc.*, 628 F.3d 451, 459 (8th Cir. 2010) (citing

---

[5] For this reason, NRPPD's speculation about the consequences of an alleged statement by Tri-State's CEO are not entitled to a presumption of truth. *See* First Am. Compl. ¶ 14, ECF No. 31 (alleging Tri-State's CEO said, "Basin was attempting to remove itself from FERC jurisdiction by borrowing a small loan from the RUS" and **speculating**, without further factual support, that the "clear consequence" of his statement "is that such termination of jurisdiction could jeopardize withdrawal by" NRPPD).

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)). To survive a motion to dismiss, the plaintiff's well-pleaded factual allegations and any incorporated documents must "raise a right to relief above the speculative level" and "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

> **B.     NRPPD has not alleged facts sufficient to support its claim seeking application of issue and claim preclusion.**

>> **1.     Federal common law governs the preclusive effect accorded to federal administrative orders.**

"The law of the forum that rendered the first judgment controls the res judicata analysis." *St. Paul Fire & Marine Ins. Co. v. Compaq Comput. Corp.*, 539 F.3d 809, 821 (8th Cir. 2008). "The preclusive effect of a federal-court judgment is determined by federal common law." *Taylor v. Sturgell*, 553 U.S. 880, 891 (2008). The same is true of federal agency judgments. *See Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104, 107–08 (1991) ("[C]ourts have not hesitated to apply *res judicata* to enforce repose" after "an administrative agency acting in a judicial capacity . . . resolves disputed issues of fact[.]"); *B & B Hardware, Inc. v. Hargis Indus., Inc.*, 575 U.S. 138, 148 (2015) (holding preclusion applies where "a single issue is before a court and an administrative agency").

>> **2.     The issues presented to FERC are not the same (or even similar) to the issues presented here.**

NRPPD's request to apply issue preclusion here fails for two reasons. First, NRPPD does not ask this Court to determine any issue FERC decided, so there is no identity of issues between issues adjudicated by the FERC Orders and the issues presented here. Second, this Court cannot determine whether issue preclusion might apply in future hypothetical cases, because it would have to rely on a series of assumptions about any future case that might not bear out.

"Allowing the same issue to be decided more than once wastes litigants' resources and adjudicators' time, and it encourages parties who lose before one tribunal to shop around for another." *B & B Hardware*, 575 U.S. at 140, 147. The doctrine of issue preclusion prevents this and promotes judicial economy and finality. *Id.* Issue preclusion is an affirmative defense, and the party asserting it bears the burden of pleading and proving the elements. *Taylor*, 553 U.S. at 907. Federal courts follow the Restatement (Second) of Judgments on "the ordinary elements" of preclusion. *B & B Hardware*, 575 U.S. at 148. Thus, to establish issue preclusion, a party must plead and prove five elements: (1) the party to be precluded was a party or in privity with a party to the first suit; (2) the issue is the same as the issue decided in the prior action; (3) the issue was actually litigated; (4) the issue was determined by a valid and final judgment; and (5) resolution of the issue was essential to the prior judgment. *Tyus v. Schoemehl*, 93 F.3d 449, 453 (8th Cir. 1996), *abrogated on other grounds by Taylor*, 553 U.S. 880.[6]

The FERC Orders resolved four issues. The Initial FERC Order addressed "the contract termination payment (CTP) and procedures for members exiting from Tri-State."[7] Initial FERC Order ¶ 1, Ex. 2. The Contract Claim Order determined FERC had primary jurisdiction to interpret the WPC, held Tri-State would not violate the WPC upon NRPPD's withdrawal **if** NRPPD's portion of electricity is not a "substantial portion" of certain assets under the WPC, **or if** it pays Basin a "pro rata portion of the outstanding indebtedness, as well as other obligations

---

[6] *Taylor* rejected the "virtual representation" doctrine, which expanded the conditions under which parties could be bound by prior decisions to which they were not party. *Taylor*, 553 U.S. at 891, 904.

[7] While NRPPD describes the Initial FERC Order as "affirming that it is just and reasonable for Tri-State Members, including NRPPD to terminate their WESCs and withdraw from Tri-State," that language appears nowhere in the Initial FERC Order. *See* First Am. Compl. ¶ 33, ECF No. 31. The Initial FERC Order considered whether the proposed method for calculating members' withdrawal payments was just and reasonable under the FPA. Initial FERC Order ¶¶ 1, 4, Ex. 2.

and commitments" upon NRPPD's withdrawal, and concluded the WPC did not violate the FPA. Contract Claim Order, ¶¶ 76–77, Ex. 4.

NRPPD does not ask this Court to determine any of those issues. Its declaratory judgment claim alleges res judicata "precludes Basin from disputing the [FERC Orders] or collaterally attacking agency determinations regarding those Orders." *Id.* ¶ 62. It asserts no other claims against Tri-State, who has not "collaterally attack[ed]" FERC's Orders and whom NRPPD has not accused of collaterally attacking the FERC Orders. While NRPPD's Amended Complaint seeks further affirmative relief against Basin, those claims do not assist NRPPD in alleging a justiciable controversy against Tri-State.

NRPPD's declaratory judgment claim against Tri-State asks this Court to pass upon the prospective validity of an affirmative defense NRPPD has not raised in this or any other forum to date. To resolve the validity of this issue preclusion defense against Tri-State, the Court must decide the following issues: (1) Was Tri-State party to the FERC proceedings from which these Orders issued? (2) Is the issue presented here the same as the issue(s) resolved by the FERC Orders? (3) Was that issue actually litigated before FERC? (4) Did the FERC Orders determine that issue in a valid and final judgment? and (5) Was resolution of that issue essential to FERC's Orders? *See Tyus*, 93 F.3d at 453.

None of these questions were decided in FERC's Orders. FERC did not address whether Tri-State is bound by the FERC Orders. The Contract Claim Order addressed jurisdiction only to determine that it had primary jurisdiction to construe the WPC. Contract Claim Order, ¶¶ 65–69, Ex. 4. The Orders did not address any of the other elements of the claim preclusion analysis. Each must be answered in the first instance by this Court. Thus, issue preclusion does not apply to any claim against Tri-State here.

Instead, NRPPD asks this Court to do the impossible and determine whether issue preclusion applies to **future** cases. Based on the facts alleged and the claims asserted, this Court cannot determine whether Tri-State is foreclosed from "making any argument . . . contrary" to FERC's Orders in future cases. The Court does not know who the parties to future litigation might be, whether the case will present the same issues that FERC resolved, whether the issue presented in future litigation was actually litigated before FERC, or whether that issue was essential to the FERC Orders.

Perhaps NRPPD expects this Court to assume that any future case will present the question it asks the Court to preemptively resolve and that all elements of issue preclusion will be satisfied in a future case. Besides being the very definition of an advisory opinion, the Court cannot adjudicate NRPPD's issue preclusion claim without analyzing **each** element of the analysis. Precise identity of the issues is essential. *See B & B Hardware*, 575 U.S. at 140 (holding issue preclusion prevents relitigation of issues "at least if the issue is really the same"); *Sandy Lake Band of Miss. Chippewa v. United States*, 714 F.3d 1098, 1103–04 (8th Cir. 2013) (holding second suit was precluded after determining both raised the same issues); *Popp Telcom v. Am. Sharecom, Inc.*, 210 F.3d 928, 939 (8th Cir. 2000) (holding issue preclusion "applies only when the issue sought to be precluded is the *same* as that involved in the prior litigation [and] the *issue was actually litigated*" (emphasis in original) (quotations omitted)); *Tyus*, 93 F.3d at 453 (describing issue presented as "whether [second] suit is barred by issue preclusion because the claims raised in that suit were litigated and necessarily decided by [a prior] suit").

The Court cannot hold issue preclusion applies while skipping critical elements of the analysis and making unfounded assumptions about what issues might be presented in a future case. Thus, NRPPD has failed to plausibly allege the elements of issue preclusion.

### 3. NRPPD's standalone claim to apply claim preclusion does not present the same claims FERC resolved.

NRPPD's claim preclusion theory suffers from the same flaw. This case does not present the same claims as those resolved by the FERC Orders, and this Court cannot make assumptions about claims that might be presented in future cases.

Like issue preclusion, claim preclusion serves the ends of judicial economy and finality. *B & B Hardware*, 575 U.S. at 140, 147. "Claim preclusion, like issue preclusion, is an affirmative defense[,]" and the party asserting it bears the burden of pleading and proving the elements. *Taylor*, 553 U.S. at 907. Claim preclusion consists of three elements: (1) the prior judgment was rendered by a court with competent jurisdiction; (2) the prior judgment was final and on the merits; and (3) the same cause of action and the same parties or their privies were involved in both cases. *Murphy v. Jones*, 877 F.2d 682, 684 (8th Cir. 1989). Claim preclusion is broader than issue preclusion in that it does not depend on actual litigation of all claims. Claim preclusion extinguishes all claims arising from a "transaction, or series of connected transactions, out of which the action arose." *Id.* (quoting Restatement (Second) of Judgments § 24(1)).

The Initial FERC Order reviewed parties' "exceptions to an Initial Decision" issued by an ALJ and determined a just, reasonable, and not unduly discriminatory method for calculating members' withdrawal payments. Initial FERC Order ¶ 1, Ex. 2. The Contract Claim Order adjudicated NRPPD's claim that the WPC was unjust, unreasonable, and unduly discriminatory under the FPA. Contract Claim Order ¶¶ 64–82, Ex. 4. NRPPD has not asked this Court to pass upon those claims, and they are beyond this Court's jurisdiction. *See* First Am. Compl., *passim*, ECF No. 31; *United Power*, 49 F.4th at 561–62. This case does not involve the same claims or causes of action as those resolved by the FERC Orders.

Nor can this Court determine whether any future cases will present claims seeking the same relief or arising from the same nucleus of operative fact as those claims adjudicated by FERC's Orders. That is a central question that must be resolved to determine application of claim preclusion. *See Murphy*, 877 F.2d at 684 (holding the "sole question" presented for resolution was "whether, for res judicata purposes, the two actions involved the same cause of action and the same parties or their privies"); *Headley v. Bacon*, 828 F.2d 1272, 1275 (8th Cir. 1987) (holding the questions remaining for the court's resolution were "whether the claims and/or defendants in the two actions were sufficiently distinct to avoid" claim preclusion).

Other elements are absent from the claim preclusion analysis too. While the parties to **this** suit share identity, any future proceeding may not share the same party alignment. Again, this question cannot be answered in the hypothetical. "Identity of parties is not a mere matter of form, but of substance. . . . A judgment is res judicata in a second action **upon the same claim between the same parties**[.]" *Headley*, 828 F.2d at 1277 (emphasis added) (quotations omitted).

NRPPD has failed to plausibly allege the elements of claim preclusion.

### 4.    NRPPD prays for relief beyond the scope of its claim.

These defects alone are sufficient to dismiss NRPPD's declaratory judgment claim, but its claim suffers from another fatal defect that merits attention. NRPPD asks this Court to enter a declaration adjudicating the parties' rights well beyond FERC's Orders without alleging any facts or pleading any claim that would entitle it to the relief requested.

NRPPD's second and third requests for relief ask this Court to expand the scope of FERC's Orders by declaring "NRPPD is permitted to terminate its WESC and withdraw from Tri-State" and "such a withdrawal does not breach the [WPC]." First Am. Compl. 23, ECF No. 31. FERC's Orders did **not** go this far. Issue and claim preclusion cannot extend to matters FERC

never determined, and NRPPD fails to plead any facts or claims upon which this additional relief it prays for could be granted against Tri-State.

The Initial FERC Order determined a general methodology for calculating member contract termination payments. Initial FERC Order ¶ 1, Ex. 2. It did not determine what NRPPD would have to pay to terminate its WESC, *see id.*, *passim.*, and that question requires further proceedings that are ongoing. *See*, *e.g.*, Contract Claim Order ¶¶ 70–71, Ex. 4; *Tri-State v. FERC*, Nos. 24-9516, 24-9532, 24-9538 (10th Cir. docketed Mar. 28, 2024); *Basin v. FERC*, Docket No. 25-1060 (D.C. Cir. docketed Feb. 13, 2025). The Contract Claim Order did not determine NRPPD's withdrawal would not violate the WPC **under any circumstances**. It held only that Tri-State will not breach the WPC upon NRPPD's withdrawal **if** Tri-State complies with section 9 of the WPC. Contract Claim Order ¶¶ 72–78, Ex. 4. That holding was also based on NRPPD's presumed compliance with FERC's other orders related to member withdrawal terms and conditions. *See id.* ¶ 78 (holding "section 9 does not prevent [NRPPD]'s withdrawal from Tri-State **under Rate Schedule No. 281**" (emphasis added)). Yet NRPPD asks this Court to issue a declaration giving it an **unqualified** right to withdraw, eliminating FERC's requirements for NRPPD to comply with Rate Schedule No. 281 and section 9 of the WPC. *See* First Am. Compl. 23, ECF No. 31. FERC's Orders cannot have preclusive effect as to issues they expressly did not decide.

NRPPD alleges no facts and pleads no claims upon which this Court could grant this dramatically expanded relief. Nor does NRPPD allege this Court would have jurisdiction to issue such an order—a dubious proposition given FERC's exclusive authority over member withdrawal terms and conditions. *See United Power*, 49 F.4th at 561–62.

For this additional reason, NRPPD's declaratory judgment claim must be dismissed.

**III.** **The Court may decline to exercise declaratory jurisdiction because NRPPD's request serves no useful purpose and is premature given pending appeals.**

In the second alternative, the Could should decline to exercise jurisdiction to further judicial economy and discourage NRPPD's gamesmanship.

**A.** **The authority conferred by the Declaratory Judgments Act is discretionary, not mandatory.**

"Under the Declaratory Judgments Act, a district court '**may** declare the rights and other legal relations of any interested party seeking' a declaration." *EMCASCO Ins. Co. v. Walker*, 108 F.4th 634, 636 (8th Cir. 2024) (emphasis in original) (quoting 28 U.S.C. § 2201(a)). While federal courts must ordinarily exercise the jurisdiction granted them, this permissive language gives district courts "substantial discretion when the federal complaint seeks a declaration." *Lexington Ins. Co. v. Integrity Land Title Co.*, 721 F.3d 958, 967 (8th Cir. 2013); *see also Wilton v. Seven Falls Co.*, 515 U.S. 277, 282 (1995) ("[D]istrict courts possess discretion in determining whether and when to entertain an action under the Declaratory Judgments Act, even when the suit otherwise satisfies subject matter jurisdictional prerequisites.").

To determine whether exercising declaratory jurisdiction is proper, the Eighth Circuit has adopted the *Aetna* factors. *Scottsdale Ins. Co. v. Detco Indus., Inc.*, 426 F.3d 994, 998–99 (8th Cir. 2005) (adopting *Aetna Cas. & Sur. Co. v. Ind-Com Elec. Co.*, 139 F.3d 419, 422 (4th Cir. 1998)). The analysis begins with a "threshold determination" whether there are parallel state and federal actions, *EMCASCO*, 108 F.4th at 637. If no parallel state action exists, the Court proceeds to a six-factor inquiry that asks:

(1)   Will the declaratory judgment action "serve a useful purpose in clarifying and settling the legal relations in issue"?

(2)   Will the declaratory judgment action "terminate and afford relief from the uncertainty, insecurity, and controversy" giving rise to the proceeding?

(3)    The strength of a "state's interest in having the issues raised in the federal declaratory judgment action decided in the state courts."

(4)    Whether "the issues raised in the federal declaratory action can be more efficiently resolved" in a pending state action.

(5)    Whether permitting the federal declaratory action would "result in unnecessary entanglement between the federal and state court systems" because of overlapping issues of fact or law.

(6)    Whether the federal declaratory judgment action is being used "as a device for procedural fencing—that is to provide another forum in a race for res judicata or to achiev[e] a federal hearing in a case otherwise not removable."

*Scottsdale Ins.*, 426 F.3d at 998 (alteration in original) (quotations omitted). "[P]ractical considerations" are critical in the analysis, *Fed. Ins. Co. v. Ameritas Life Ins. Corp.*, 4:19CV3035, 2019 WL 5310042, at *3 (D. Neb. Oct. 21, 2019) (quotations omitted) (citing *Lexington Ins.*, 721 F.3d at 967), as are considerations of "federalism, efficiency, and comity," *Aetna Cas.*, 139 F.3d at 422.

**B.    The *Aetna* factors counsel against exercising jurisdiction here.**

The inchoate nature of the relief sought and the evident gamesmanship in NRPPD's request for preemptive declaratory victory strongly counsel in favor of abstention here.

**1.    The preemptive victory NRPPD seeks will not serve a useful purpose in clarifying these parties' rights or terminating uncertainty.**

Because NRPPD seeks vacuous declaratory relief despite the absence of any concrete dispute with Tri-State, this suit will not serve any useful purpose in clarifying the parties' rights or terminating uncertainty. *See Aetna*, 139 F.3d at 423–24 (affirming dismissal where the "case would do little to clarify the legal relations between the parties or afford relief from uncertainty" and would instead "produce piecemeal litigation"); *Nat'l Tr. Ins. Co. v. S. Heating & Cooling Inc*, 12 F.4th 1278, 1288–89 (11th Cir. 2021) (affirming dismissal where the declaratory judgment requested "would not resolve the underlying controversy . . . or clarify the legal

relationships at issue"); *Donegal Ins. Grp. v. Innovations Windows & Siding, LLC*, 4:23-CV-3092, 2024 WL 1299254, at *3 (D. Neb. Mar. 27, 2024) (dismissing declaratory judgment claim where it was "unclear what 'useful purpose' a declaratory judgment would serve").

NRPPD's own allegations show the purported "need" for the requested declaration is unfounded. NRPPD alleges Basin's prior collateral attacks on FERC orders "have twice been **denied**." First Am. Compl. ¶ 11, ECF No. 31 (emphasis added); *see also Basin I*, 2022 WL 18622225 at *10–11; *Basin II*, 2024 WL 3202167 at *8. In short, even if a party collaterally attacks FERC's Orders in a future proceeding, there is little risk of the attack gaining traction or undermining FERC or the federal circuit courts' authority. Courts have proven themselves capable of correctly balancing their own jurisdiction with FERC's authority and orders.

Other courts are likewise capable of conducting a preclusion analysis in a future suit with the benefit of concrete claims for relief that can sharpen the analysis and result in a decision that will resolve a real controversy. Here, by contrast, in the absence of concrete claims for relief capable of settling the parties' legal relations, "[t]he proposed decree can not end the controversy." *See Wycoff*, 344 U.S. at 246. At most, this Court could declare Tri-State will be bound by issue and claim preclusion **if** the elements of preclusion are satisfied on the facts of the future proceeding. Such a declaration will not alleviate the need for a future court to conduct the same analysis based on future claims asserted. There is no need for this Court to preemptively intervene and no benefit or efficiency to be achieved by a prospective declaration.

### 2. NRPPD is engaging in improper procedural fencing.

Furthermore, NRPPD's request for this Court to issue orders that could potentially interfere with ongoing FERC and federal circuit court proceedings is a transparent attempt at "procedural fencing—that is to provide another forum in a race for res judicata." *See Scottsdale Ins.*, 426 F.3d at 998 (quotations omitted); *see also Nat'l Tr. Ins.*, 12 F.4th at 1287 (describing

"procedural fencing" as "an umbrella term for the improper use of procedural mechanisms to avoid a merits ruling or to forum shop").

Given the lack of any concrete claims for relief, NRPPD's request for declaratory judgment is nothing more than procedural manipulation seeking litigation advantage through forum shopping or in a race for preclusion. NRPPD's request to apply preclusion here **undermines** the very purposes the preclusion doctrines are intended to serve. The judgment requested would not further judicial economy or protect Basin, Tri-State, or NRPPD from "the expense and vexation of multiple lawsuits," because it cannot eliminate the need for future litigation even if the theoretical questions presented here eventually become concrete. *See Tyus*, 93 F.3d at 453–54. Any preclusion analysis here is merely hypothetical. To have any impact on the parties' rights, a future court must conduct further proceedings to determine if preclusion bars claims asserted in a future case and finally determine these parties' rights. This case merely adds an extra layer of unnecessary litigation to the legal saga.

These concerns are heightened given that both FERC Orders are subject to pending appeals before the D.C. and Tenth Circuits. *See Tri-State v. FERC*, Nos. 24-9516, 24-9532, 24-9538 (10th Cir. docketed Mar. 28, 2024); *Basin v. FERC*, Docket No. 25-1060 (D.C. Cir. docketed Feb. 13, 2025). A premature declaration holding the Orders are binding and prohibiting Tri-State from "making any argument to the contrary" would create a **greater** risk of unnecessary multiplicative litigation. If either Order is reversed, vacated, or modified, further proceedings before this or another federal court would be necessary to reverse, vacate, or modify any prospective declaration premised on the Orders.

In sum, NRPPD's declaratory judgment claim will unnecessarily multiply litigation without serving any useful purpose in finally settling the parties' rights.

### 3. The circumstances of this case favor dismissal over a stay.

"A district court may dismiss or stay a declaratory judgment action which serves no useful purpose." *Donegal Ins.*, 2024 WL 1299254 at *2 (citing *Cincinnati Indem. Co. v. A & K Constr. Co.*, 542 F.3d 623, 625 (8th Cir. 2008); *Wilton*, 515 U.S. at 288). Dismissal is most appropriate here because a stay pending resolution of the appeals will not eliminate other defects in NRPPD's claims militating against exercising jurisdiction. Even after the appeals are finally resolved, NRPPD's declaratory judgment claim against Tri-State will not serve any useful purpose in settling the parties' rights. That question will only become ripe if and when some party asserts a claim or defense in another proceeding implicating the preclusive effect of FERC's Orders. That may not ever occur, but, if it does, that action, not this one, will be the most appropriate forum to adjudicate the issue. Tri-State therefore urges the Court to dismiss NRPPD's declaratory judgment claim. In the alternative, Tri-State asks the Court to stay the case pending resolution of the D.C. and Tenth Circuit appeals of the FERC Orders.

## CONCLUSION

Tri-State asks this Court to dismiss NRPPD's declaratory judgment claim because it fails to present a justiciable controversy. Alternatively, Tri-State asks the Court to dismiss the declaratory judgment claim under Rule 12(b)(6) because NRPPD fails to state a claim against Tri-State upon which relief may be granted. In the second alternative, Tri-State asks the Court to decline jurisdiction under the Declaratory Judgment Act and to dismiss the declaratory judgment claim or stay the case pending final resolution of the appeals of the FERC Orders.

Respectfully submitted this 10th day of October, 2025.

/s/ Kenneth F. Rossman, IV
Kenneth F. Rossman, IV
Colorado Bar No. 29249
Attorney for Defendant Tri-State Generation &
Transmission Association, Inc.
WOMBLE BOND DICKINSON (US) LLP
1601 19th Street, Suite 1000
Denver, CO 80202
Telephone: (303) 623-9000
Fax: (303) 623-9222
Email: ken.rossman@wbd-us.com

/s/ Thomas Q. Swanson
Thomas Q. Swanson
Bar No. 27461
HILGERS GRABEN PLLC
1320 Lincoln Mall, Suite 200
Lincoln, NE 68508
Telephone: (402) 395-4469
Fax: (402) 413-1880
Email: tswanson@hilgersgraben.com

*Attorneys for Defendant* TRI-STATE
GENERATION & TRANSMISSION
ASSOCIATION, INC.

## CERTIFICATE OF COMPLIANCE

I certify that the foregoing Brief in Support of Motion to Dismiss First Amended Complaint complies with the requires of Nebraska Civil Rule 7.1(d).

Word limits. The brief contains 8,425 words, including the caption, headings, footnotes, and quotations according to the word-count function of Microsoft Word for Microsoft 365 MSO Version 2408.

Generative artificial intelligence. No generative artificial intelligence program was used in drafting this brief.

DATED: October 10, 2025                     Respectfully submitted,

*/s/ Kenneth F. Rossman, IV*
Kenneth F. Rossman, IV
Colorado Bar No. 29249
Attorney for Defendant Tri-State Generation
& Transmission Association, Inc.
WOMBLE BOND DICKINSON (US) LLP
1601 19th Street, Suite 1000
Denver, CO 80202
Telephone: (303) 623-9000
Fax: (303) 623-9222
Email: ken.rossman@wbd-us.com

*/s/ Thomas Q. Swanson*
Thomas Q. Swanson
Bar No. 27461
HILGERS GRABEN PLLC
1320 Lincoln Mall, Suite 200
Lincoln, NE 68508
Telephone: (402) 395-4469
Fax: (402) 413-1880
Email: tswanson@hilgersgraben.com

*Attorneys for Defendant* TRI-STATE
GENERATION & TRANSMISSION
ASSOCIATION, INC.

## CERTIFICATE OF SERVICE

I hereby certify that on October 10, 2025, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which sent notification of said filing to all CM/ECF participants.

*s/ Thomas Q. Swanson*
Thomas Q. Swanson